■ In the Matter of CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Petitioner, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION et al., Respondents, and ENVIRONMENTAL DEFENSE FUND et al., Intervenors-Respondents.—Proceeding pursuant to CPLR article 78 to review a determination of the Commissioner of the New York State Department of Environmental Conservation, dated September 14, 1983, which, after a public hearing, conditioned the reconversion of units two and three of the Arthur Kill Generating Plant and unit three of the Ravenswood Generating Plant to

the burning of coal on the installation of flue-gas desulfuriza-
tion (FGD) systems.

Determination confirmed and proceeding dismissed on the
merits, without costs or disbursements.

The proceeding entitled *Molinari v Williams,* which was
consolidated herein, is hereby dismissed, without costs or
disbursements, for failure to prosecute.

On February 2, 1981, Consolidated Edison Company of New
York, Inc. (hereinafter Con Ed) applied to the New York State
Department of Environmental Conservation (hereinafter DEC)
for the permits needed to reconvert units two and three at the
Arthur Kill Generating Plant and unit three at the Ravens-
wood Generating Plant from oil to coal-fired generation. Con
Ed filed a draft environmental impact statement (DEIS) in
which it was concluded that the installation of an FGD system
would not be practicable at Ravenswood. The DEIS was re-
viewed in public hearings. The parties to the proceeding
presented testimony concerning six coal conversion alterna-
tives. At the conclusion of these hearings, the administrative
law judge compiled a report, which, together with the DEIS,
became the final environmental impact statement (FEIS). In
his determination, the commissioner stated that Con Ed
should be granted authority to burn coal at its Arthur Kill
and Ravenswood plants upon the express condition that it
install and use FGD equipment (also referred to as "scrub-
bers"), at each of these sites.

On or about December 12, 1983, Con Ed filed a petition with
the DEC in which it asked the commissioner, *inter alia,* to
reconsider his decision, and allow Con Ed to reconvert Ravens-
wood unit three and Arthur Kill units two and three to coal
burning without scrubbers. The commissioner denied the peti-
tion.

In this proceeding, Con Ed contends that the commissioner
did not comply with the mandates of the State Environmental
Quality Review Act (ECL article 8, hereinafter SEQRA).

ECL article 8 provides that before an agency approves of
any action which could have a significant effect on the envi-
ronment, the agency must "prepare, or cause to be prepared
* * * an environmental impact statement" (ECL 8-0109 [2])
and must make an "explicit finding" that the procedural
requirements of the act have been met and "that consistent
with social, economic and other essential consideration, to the
maximum extent practicable, adverse environmental effects
revealed in the environmental impact statement process will

be minimized or avoided" (ECL 8-0109 [8]; *see also,* ECL 8-0109 [1]). SEQRA mandates literal compliance with its procedural requirements (*Glen Head—Glenwood Landing Civic Council v Town of Oyster Bay* 88 AD2d 484, 490-491). "Literal compliance is required because the Legislature has directed that the policies of the State and its political subdivisions shall be administered 'to the fullest extent possible' in accordance with SEQRA (ECL 8-0103, subd 6) * * * The test of SEQRA compliance is whether the approving agency has taken a "hard look' at the relevant areas of environmental concern" (*Glen Head—Glenwood Landing Civic Council v Town of Oyster Bay, supra,* pp 490-491, 492).

It is axiomatic that we may not substitute our judgment for that of the commissioner (*e.g., Matter of Environmental Defense Fund v Flacke,* 96 AD2d 862; *Town of Hempstead v Flacke,* 82 AD2d 183) but may annul a determination only if it is arbitrary and capricious, or unsupported by substantial evidence (*Matter of Environmental Defense Fund v Flacke, supra*).

We find that the determination of the commissioner is supported by substantial evidence and that the commissioner has complied with the procedural and substantive requirements of SEQRA (*see, Aldrich v Pattison,* 107 AD2d 258).

Testimony adduced at the hearing demonstrated that Con Ed's proposal could have serious adverse environmental effects. The sulfur dioxide emission level under Con Ed's proposed conversion without FGD systems would represent an increase of roughly eight times the existing emissions at the three plants involved, from 9,300 tons per year to 76,000 tons per year. This would increase the total sulfur dioxide emissions for the entire New York City metropolitan area by almost three times, from the present emissions level of about 40,000 tons per year to about 110,000 tons per year. Nitrogen dioxide emissions would also be greatly increased. If 2.5% sulfur coal were to be burned with 90% efficient FGD equipment at both Arthur Kill and Ravenswood (the alternative selected by the commissioner), potential increase in sulfur dioxide emissions would be reduced by over 80%, by allowing the release of only about 10,000 additional tons of sulfur dioxide from these plants.

The deposition of sulfur compounds can occur through two mechanisms, wet deposition, primarily in the form of sulfate, in which atmospheric sulfur is carried to the ground by precipitation (popularly known as acid rain) and dry deposition which occurs through direct contact of gases and particles

with the ground or vegetation. There was much testimony at the hearing concerning the environmental harm caused by acid rain.

Con Ed challenges the commissioner's determination on the grounds (1) that the price of oil used by the administrative law judge and the commissioner in doing an economic analysis of the various conversion alternatives was too high in light of the rebuttal testimony presented by Con Ed, resulting in the erroneous conclusion by the commissioner that the conversion costs would be paid for out of reduced ratepayer savings instead of increased rates, and (2) that so much of the determination as found that installation of an FGD system at Ravenswood was practicable was not supported by substantial evidence.

Con Ed's contentions are not supported by the record. The administrative law judge and the commissioner both considered the " 'low oil price' scenario" but decided not to rely solely on this information in their economic analysis of the conversion because it was unreasonable to assume that oil prices would remain depressed for the next few decades. This conclusion was proper, based on testimony given by Con Ed's own witnesses regarding the volatility of the international oil market and the difficulty in accurately predicting oil prices. Moreover, even the economic analyses performed by Con Ed's witnesses under the " 'low oil price' scenario" revealed net savings to ratepayers over the lives of the units.

The record similarly supports the conclusion that the installation of an FGD system at Ravenswood is technologically and economically practicable, as Con Ed's own witnesses gave testimony to that effect. The commissioner recognized that there might be negative impacts which could arise from the installation of the FGD system but properly balanced them, as required by SEQRA, against the ecological destruction which would be caused by the additional sulfur dioxide emitted into the atmosphere which would occur if coal was burned without FGD systems.

As the commissioner's determination is supported by substantial evidence and the procedural requirements of SEQRA have been adhered to, said determination must be confirmed. Mollen, P. J., Gibbons, Rubin and Kooper, JJ., concur.