■ In the Matter of RUTH SCHIFF et al., Respondents, v BOARD OF ESTIMATE OF THE CITY OF NEW YORK et al., Appellants.—In a proceeding pursuant to CPLR article 78, inter alia, to review (1) a resolution of the respondent Board of Estimate of the City of New York, dated December 20, 1984, which, inter alia, recommended that the New York City Department of Sanitation immediately undertake further study of certain proposed waste disposal projects in the City of New York and initiate such further steps as are necessary to implement such projects, and (2) certain resolutions of the respondent Board of Estimate, all dated August 15, 1985, which approved certain measures and agreements necessary

to effectuate the development of a mass-burning resource recovery facility at the Brooklyn Navy Yard, the appeal (by permission) is from an order of the Supreme Court, Kings County (Miller, J.), dated November 26, 1985, which ordered that a trial be held on the issues raised by the petitioners concerning, *inter alia,* the adequacy of the final environmental impact statement.

Order reversed, with costs, and proceeding dismissed on the merits.

This proceeding arose from a proposal to construct a mass-burning resource recovery facility at the Brooklyn Navy Yard. On June 27, 1985, a final environmental impact statement (hereinafter FEIS) was certified as complete. On August 15, 1985, following a public hearing, the Board of Estimate approved the project and adopted certain resolutions necessary to effectuate the development of the facility. The petitioners commenced this proceeding, alleging, *inter alia,* that the Board's action was arbitrary and capricious because it was taken in reliance upon an inadequate FEIS. Specifically, the petitioners alleged that the FEIS contained an inadequate discussion of various environmental issues, including the method of site selection, the projected amounts of dioxin emission, the dangers of toxic and explosive waste in the facility, the problems associated with disposal of ash produced by the facility, the amount of noise and odors to be produced by the facility, and its effects on water quality. The petitioners also challenged a Board of Estimate resolution adopted on December 20, 1984 (which recommended further study of four additional proposed resource recovery facilities), on the ground that a programmatic environmental impact statement was not prepared prior to the Board's adoption of the resolution. Special Term determined that the petitioners had raised issues of fact and ordered that a trial be held on the environmental issues, directing that there be testimony on numerous technical issues, such as the effects of various pollutants upon city residents, the levels of probable dioxin emissions from the facility, and the reasonableness of certain conclusions reached in the FEIS.

The State Environmental Quality Review Act (hereinafter SEQRA) was enacted to insure that "agency decision-makers—enlightened by public comment where appropriate—will identify and focus attention on any environmental impact of proposed action, that they will balance those consequences against other relevant social and economic considerations, minimize adverse environmental effects to the maximum ex-

tent practicable, and then articulate the bases for their choices" *(Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400, 414-415). However, nothing in the law requires an agency to reach a particular result on any issue— the Legislature has left the agencies considerable latitude in evaluating environmental effects and choosing among alternatives. Thus, in reviewing agency determinations, courts are to be guided by standards applicable to administrative proceedings generally: "whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion" (CPLR 7803 [3]; *Matter of Jackson v New York State Urban Dev. Corp., supra,* p 416). "In a statutory scheme whose purpose is that the agency decision-makers focus attention on environmental concerns, it is not the role of the courts to weigh the desirability of any action or choose among alternatives, but to assure that the agency itself has satisfied SEQRA, procedurally and substantively" *(Matter of Jackson v New York State Urban Dev. Corp., supra,* p 416).

An agency's determination as to the sufficiency of an environmental impact statement will pass judicial scrutiny if the record shows that it identified the relevant areas of environmental concern, took a "hard look" at them and made a " 'reasoned elaboration' " of the basis for its determination *(Matter of Jackson v New York State Urban Dev. Corp., supra,* p 417, quoting from *Aldrich v Pattison,* 107 AD2d 258, 265). The "hard look" standard does not authorize a court to conduct a detailed de novo analysis of every environmental impact of, or alternative to, a proposed project which was included in, or omitted from, an environmental impact statement *(Aldrich v Pattison, supra,* at p 267). An agency's substantive obligations under SEQRA must be viewed in light of a rule of reason—the environmental impact statement is to be analytical, not encyclopedic, and the degree of detail with which each factor must be discussed will vary with the circumstances and nature of the proposal *(see, Matter of Jackson v New York State Urban Dev. Corp., supra).* So long as the agency honors its mandate regarding environmental protection by complying strictly with prescribed procedures and giving reasoned consideration to all pertinent issues revealed in the process, the court is not permitted to second-guess the agency's choice.

In the case at bar, the claims of petitioners and the FEIS itself are all fully set out in the record, a fact which even the petitioners have conceded. Therefore, a trial at Special Term

was not warranted. All of the issues involved in this proceeding are legal questions which could have been decided by Special Term without a trial and which can be decided by this court based on the record before us.

After reviewing the record, including the entire FEIS, we have determined that the FEIS was sufficient. All of the concerns of the petitioners have been discussed in the FEIS and the FEIS contains the requisite " 'reasoned elaboration' " to justify its conclusions. We are aware, of course, that the petitioners vehemently dispute the conclusions reached in the FEIS, but this is not a reason to find the FEIS insufficient. An FEIS need not achieve scientific unanimity on the desirability of proceeding with a proposed action *(see, Matter of Environmental Defense Fund v Flacke,* 96 AD2d 862). The record indicates that the New York City Department of Sanitation identified all of the relevant concerns, took a "hard look" at them, and considered a reasonable range of alternatives. Under these circumstances, its choice cannot be upset by us *(see, Matter of Jackson v New York State Urban Dev. Corp., supra).*

As for the petitioners' challenge to the Board of Estimate resolution dated December 20, 1984, we have determined that it is without merit. The challenged resolution was merely a recommendation that the New York City Department of Sanitation undertake further study to determine the feasibility of constructing four additional resource recovery facilities. It did not "commit the agency to a definite course of future decisions" and therefore was not "action" for the purpose of SEQRA *(see,* 6 NYCRR 617.2 [b] [2]; *Matter of Programming & Sys. v New York State Urban Dev. Corp.,* 61 NY2d 738).

Since no part of the affected land is found within any Manhattan community district, it was not necessary to submit the proposal to a Manhattan community board for review *(see,* NY City Charter § 197-c). Finally, even if the petitioners' argument that the Board of Estimate is apportioned in an unconstitutional manner is correct, such misapportionment would not affect the validity of its acts *(see, Buckley v Valeo,* 424 US 1; *Matter of Sherrill v O'Brien,* 188 NY 185). Weinstein, J. P., Lawrence, Kunzeman and Kooper, JJ., concur.