*929 OPINION OF THE COURT
J. Robert Houston, J.
In this proceeding pursuant to CPLR article 78, the petitioners seek to vacate and set aside certain applications made by the respondent towns, for an urban development action grant (UDAG) to assist in a proposal to establish a chicken processing plant in the Town of North Dansville, with ancillary chicken grow houses and manure disposal locations in the Town of Groveland.
The two towns had submitted coordinated applications on May 30, 1986. Subsequent to the argument of this matter, it appears that the Department of Housing and Urban Development has indicated that respondents’ applications have not been granted; permission was given, however, to resubmit such applications upon the furnishing of appropriate additional materials and the compliance by respondents with Federal regulations pertaining to environmental assessment and citizen participation. The matter nevertheless remains appropriate for consideration by this court.
The petitioners seek to have this court declare that the applications were illegally filed and to issue an order directing the respondents to withdraw the applications. The ground upon which this relief is sought is, in summary, that the respondent towns and their Supervisors failed to carry out certain duties imposed upon them under the State Environmental Quality Review Act, prior to submitting the subject applications.
The respondents have appeared in response to this petition and do not deny the submission of the subject applications substantially in the manner alleged by petitioners. Respondents deny, however, that as a matter of law, ECL 8-0101 et seq. (State Environmental Quality Review Act [SEQRA]) applies to a mere application by the subject municipalities, for Housing and Urban Development Agency funding.
The respondents also assert that the instant petition is untimely, as it was not filed within four months of the date upon which the Supervisors of the respective towns were authorized by resolution of the Town Boards to submit the subject applications.
The court will deal with this procedural issue first. Upon consideration of the material submitted, the court finds and determines that the respondents’ defense of untimeliness must fall. *930 CPLR 217 provides in pertinent part: "Unless a shorter time is provided in the law authorizing the proceeding, a proceeding against a body or officer must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner” (emphasis added).
The court finds that the date upon which the complained of administrative action became final, within the purview of the statute, was the date upon which the applications were executed by the Town Supervisors, pursuant to the authority granted by the Town Boards.
The resolutions authorizing execution of the grant applications did not impose any limitation of time within which the Supervisors were required to act. The Supervisors could have delayed action upon the applications until such time, e.g., as applicable notice and hearing requirements had been met, or an environmental impact statement had been filed.
It follows necessarily that had the petitioner attempted to commence this proceeding prior to the time of the final execution of the respective applications, the court would have been compelled to dismiss the petition as premature. Accordingly, the date of actual submission of the UDAG applications is the date upon which the administrative determinations of the Town Boards became "final” and had an impact upon the petitioners (cf, Matter of Gates v Walkley, 41 AD2d 319; see also, Mundy v Nassau County Civ. Serv. Commn., 44 NY2d 352).
Moving to the merits of the petition, the court finds that an essentially narrow legal issue has been presented to the court for its determination. The parties hereto appear to agree that ECL 8-0105 and 8-0109 mandate the performance of certain duties by agencies which have taken any "action” within the purview of the statute. These duties include, inter alia, a declaration of one involved agency as a lead agency, and a determination by such lead agency as to whether or not the proposed action would have a "significant effect on the environment.” (ECL 8-0109 [2].)
In the event of a positive declaration of environmental impact, the filing of draft, and final, environmental impact statements is required, and consideration of such environmental impact statements must be undertaken by agencies prior to granting any significant authorization permitting the action to go forward.
The applications for funding made by the respondents ap *931 pear to concede that the construction project itself is likely to have a significant environmental impact on both towns. It further appears that subsequent to the applications for funding, the Town of North Dansville designated itself as a "lead agency” and caused to be filed a draft generic environmental impact statement with respect to the project.
The gravaman of the dispute at bar is whether preliminary steps in the project, which involve only an application for funding, and which do not specifically commit the agency to a specific course of action, require the completion of the designated environmental review process before they are undertaken by the municipality.
Initially, in answering this question the court finds without merit the respondents’ contention that the activity here in issue is exempted by the provisions of ECL 8-0105 (5) (ii) as "official acts of a ministerial nature, involving no exercise of discretion”.
The resolutions adopted by the Town Board, by their explicit terms, granted "authorization” to the Supervisor to make the application. It did not "direct” the Supervisor to do so, nor did it provide for any specific time within which the duty was to be performed.
A ministerial act is defined by 6 NYCRR 617.2 (t) as an "action performed upon a given state of facts in a prescribed manner imposed by law without the exercise of any judgment or discretion as to the propriety of the act”.
The authority granted in the resolutions at bar is substantially broader than this narrow exemption. Similarly, the fully authorized and executed applications were clearly the result of discretionary determinations on the part of the Town Boards, which likewise did not constitute acts of a "ministerial nature”.
Having determined that the applications for funding are not "ministerial” in nature, the court must now turn to a consideration of whether the submission of the respective applications constitute an "action”, as defined by SEQRA.
The court, upon consideration of the materials submitted herein, finds that beyond cavil, the construction projects in both the Town of North Dansville and the Town of Groveland are "actions” within the meaning of ECL 8-0105 (4). By virtue of these very applications, the activities constitute a project or activity "supported in whole or part through contracts, grants, *932 subsidies, loans, or other forms of funding assistance from one or more agencies” (ECL 8-0105 [4] [i]; emphasis added).
The application for a development grant clearly is a form of funding assistance available only through the municipality.
The court notes that, having thus satisfied the statutory definition of "action” under ECL 8-0105 (4) it would be immaterial, that the application may not also constitute a "planning activity” which commits the agency to a definite course of future decisions under paragraph (2) of subdivision (b) of 6 NYCRR 617.2.
Having found that the contemplated construction projects are an "action” within the statutory definition, and that the UDAG funding applications are an integral part of the overall construction project, the general regulations appearing under section 617.2 clearly require that in passing upon the definition of a project the court must consider "the entire set of activities or steps” involved in the project. Thus, it is immaterial as well that the actual application for funds works no present impact upon the environment so long as the project itself would do so when completed.
Having concluded that the applications are a part of an "action” as defined by the statutes, the court must next consider whether the particular step of the project here in issue falls within any of the exemptions provided in 6 NYCRR 617.3 (c), as "contemporaneous environmental, engineering, economic, feasibility * * * and budgetary processes necessary to the formulation of a proposal for action” (6 NYCRR 617.3 M [1]).
While such a construction is urged upon the court by the respondents, the court cannot concur. It appears clear that the applications here in issue, as distinguished from the submissions of proposals to the Town Boards, or committee investigations carried out with respect to such submissions, involve far more than mere studies or "budgetary processes”.
The applications at bar go further and constitute an actual seeking of funds which are to be disbursed by the towns to the applicant for use as "seed money” in bringing the project to fruition. They constitute, thus, both a "significant authorization” for a proposed action (cf., Matter of Tri-County Taxpayers Assn. v Town Bd., 55 NY2d 41) and substantial participation in the project by the town. Accordingly, the court finds that it is far beyond any fair reading of the exemption contained in 6 NYCRR 617.3 (c) for "budgetary *933 processes necessary to the formulation of a proposal” in this matter.
Having concluded that the subject applications are not exempt from the requirements of SEQRA, there only remains for consideration whether the project is sufficiently advanced to make environmental review feasible and appropriate.
A resolution of this question turns, in the ultimate analysis, upon a commonsense appraisal of the purposes of the State Environmental Quality Review Act, and a balancing of the needs of a municipality to freely plan and carry out budgeting studies, against the need of an informed populous to have access to relevant environmental information as early as possible in the planning process for a project.
Instructive in this regard is the case of Matter of Programming & Sys. v New York State Urban Dev. Corp. (61 NY2d 738). In that case, the Court of Appeals held that even where a project was to be undertaken which could have significant environmental impact, the preparation of an environmental impact statement (and, inferentially, other steps related thereto) "is not required until a specific project plan for the development is actually formulated and proposed” (61 NY2d, at 739).
The commonsense reason for this determination is that without a specific plan to assess, environmental review information will necessarily be so general and vague as to be essentially worthless for planning purposes. To require environmental review under such circumstances would obviously prove to be an exercise in wasteful futility.
A brief review of the application document itself conclusively refutes the arguments of respondents that the instant proposal is nothing more than a generalized "dream”. The applications themselves contain specific descriptions of size and location of facilities; the anticipated economic impact and proposed scope of operations. These, taken together, are sufficient to constitute a "specific project plan” necessary to trigger a requirement for compliance with the provisions of SEQRA and the filing of an environmental impact statement (Matter of Programming & Sys. v New York State Urban Dev. Corp., supra).
Significant to this court’s determination on this issue is consideration of the broad general purposes for which the State Environmental Quality Review Act was enacted.
The purpose of the review and notice requirements con *934 tained in the statute is to act as an early warning "alarm bell” to alert responsible public officials to environmental changes before they have reached ecological points of no return (Matter of Badura v Guelli, 94 AD2d 972, citing Matter of Town of Henrietta v Department of Envtl. Conservation, 76 AD2d 215).
The court notes that the UDAG applications specifically required public comment prior to submission under Federal regulations; and both of the Town Boards involved here as respondents held such public hearings. It further appears that new hearings will be required prior to respondents’ resubmission of their applications.
It would indeed be anomalous for public hearings to take place on a proposal, in the conscious absence of environmental information necessary to make public comment on the various issues, informed comment.
As noted by the Appellate Division, Second Department, in Matter of Shiff v Board of Estimate (122 AD2d 57, 58-59): "The State Environmental Quality Review Act * * * was enacted to insure that 'agency decision makers — enlightened by public comment where appropriate — will identify and focus attention on any environmental impact of proposed action, that they will balance those consequences against other relevant social and economic considerations, minimize adverse environmental effects to the maximum extent practicable, and then articulate the bases for their choices’ ”.
To effectuate this design it is undeniably necessary to provide the public with as much information, including environmental information, as is reasonably possible, in order to permit all interested persons to make an informed choice.
A requirement that the provisions of the State Environmental Quality Review Act be followed in this matter, thus not only comports with the strict letter of the legislation, but with its purpose and spirit as well.
Accordingly, the court finds that the applications for an urban development action grant were submitted prior to full compliance with the provisions of the State Environmental Quality Review Act.
The matter is, therefore, remitted to the respondents for full compliance with the mandates of the State Environmental Quality Review Act including the timely filing of all required *935 environmental impact statements. Respondents shall consider, and make available for public review, such environmental impact statements prior to granting any authorization to resubmit their applications for UDAG funding (cf., Matter of Badura v Guelli, 94 AD2d 972, supra; see also, Matter of Kirk Astor Drive Neighborhood Assn. v Town Bd., 106 AD2d 868).