OPINION OF THE COURT
Vincent R. Balletta, J.
In this CPLR article 78 proceeding, the petitioners apply for a preliminary injunction, and the respondent (Town) cross-moves for an order dismissing the petition.
The instant action arises out of the Town’s latest efforts to solve a problem that has perplexed, and will continue to perplex, every governmental body on Long Island, namely, the need to dispose of the enormous amount of solid waste generated each day by a relatively affluent and wasteful society. The Town itself provides waste disposal services for approximately 300,000 residents who generate between 250,000 and 300,000 tons of waste per year, or approximately 1,000 tons each business day.
It appears that in the late 1970’s the Town began preliminary assessment of resource recovery as a methodology for the disposal of this solid waste. More recently, in October 1986, the Town issued a massive document entitled a "Final Request for Proposals for a Resource Recovery Facility” (FRP), the purpose of which was "to obtain proposals from qualified firms for the design, ownership, implementation and operation of a comprehensive system for the disposal of Municipal Solid Waste (MSW)”.
It is this October 1986 FRP that the petitioners have challenged in this action. Specifically, their article 78 petition seeks a judgment:
"A. Annulling the Town Board’s issuance on October 15, 1986, of the Final Request for Proposals for a Resource Recovery Facility; [and]
"B. Enjoining the respondent from selecting any submitted proposals until after respondent has complied with the requirements of SEQRA [New York State Environmental Quality Review Act] and related regulations”.
The petitioners essentially contend that the Town has improperly narrowed the field of alternative locations for the proposed facility by offering various attractive incentives to contractors who choose the Town’s existing Old Bethpage Solid Waste Disposal Complex (OBSWDC) as the site for the *981 facility, and by issuing a request for proposals which clearly indicates the Town’s preference for this location.
By the instant application, the petitioners seek to enjoin the Town, during the pendency of this proceeding, from making a final selection from among any of the proposals that have been submitted, or may be submitted, in response to the FRP. The petitioners contend that by the issuance of the FRP in question, the Town has, in effect, made a site selection for the construction of any resource recovery facility. Such a de facto site selection, they argue, constitutes an "action” which triggers the requirements of SEQRA for a complete environmental review.
The Town, on the other hand, cross-moves to dismiss the petition on the grounds that the FRP does not commit it to a definite course of action, and is, therefore, not an "action” within the meaning of ECL 8-0105 (4). The court agrees with the Town to the extent that the court does not believe that the issuance of the particular FRP in this case is an "action” requiring compliance with SEQRA.
The State Environmental Quality Review Act (SEQRA) mandates that all agencies prepare an environmental impact statement (EIS) on any action they propose or approve which may have a significant impact on the environment. (ECL 8-0109 [2].) ECL 8-0105 (4) defines "actions” to include:
"(i) projects or activities directly undertaken by any agency; or projects or activities supported in whole or part through contracts, grants, subsidies, loans, or other forms of funding assistance from one or more agencies; or projects or activities involving the issuance to a person of a lease, permit, license, certificate or other entitlement for use or permission to act by one or more agencies;
"(ii) policy, regulations, and procedure-making.”
In addition, section 617.2 of the Regulations of the Environmental Conservation Department (6 NYCRR) provides as follows:
"(b) Actions include * * *
"(2) planning activities of an agency that commit the agency to a definite course of future decisions”.
However, according to the regulations, agencies are free to participate in "preliminary planning and budgetary processes necessary to the formulation of a proposal for action, provided those activities do not commit the agency to commence, engage in or approve such action”. (6 NYCRR 617.3 [c] [1].)
*982 The Court of Appeals has recognized that "the imprecision of the statutory provisions makes it difficult to identify the exact point at which an environmental impact statement must be prepared to satisfy the requirements of the statutory scheme”. (Matter of Tri-County Taxpayers Assn. v Town Bd., 55 NY2d 41, 45 [1982].)
In the instant case, the FRP, no matter how favorable it makes the OBSWDC site, is not such an "action” as to require the filing of an EIS before its issuance. The FRP, by its express terms, states that the Town will consider not only different technologies, but also different sites. The FRP also provides that the Town is not committed to accepting any proposal that is submitted, and that the Town may "reject any or all proposals”. (Cf., Matter of Schiff v Board of Estimate, 122 AD2d 57 [2d Dept 1986].)
Further, the court does not believe that the Town is required by SEQRA to leave the matter of site selection open when soliciting proposals. In fact, the Town could have designated the OBSWDC location as the site of the facility without coming into conflict with SEQRA. (See, e.g., Matter of Programming & Sys. v New York State Urban Dev. Corp., 61 NY2d 738 [1984].)
However, since the need for an environmental impact statement for this type of facility is beyond dispute, SEQRA must be complied with before any proposal is accepted or any contracts are signed. The court does not accept the Town’s argument that the conditional nature of the draft service agreement exempts it from the category of "actions” triggering the environmental review process. Indeed, the court would go so far as to say that any contract accepting a proposal in this case prior to an environmental impact statement being made available to the public would be void. (Cf., Devitt v Heimbach, 89 AD2d 920 [2d Dept 1982], affd 58 NY2d 925; Matter of City of Glens Falls v Board of Educ., 88 AD2d 233, 237 [3d Dept 1982].)
In this regard, the language of the Court of Appeals in Programming & Sys. (supra, at 739) is clearly illustrative: "While preliminary steps in the planning of the 42nd Street Development Project have been taken, an environmental impact statement is not required until a specific project plan for the development is actually formulated and proposed. At that time, prior to acting on the proposal, the statement must be prepared, filed and made available to the public”.
*983 The Court of Appeals stated in the same case that the "environmental impact statement mandated by ECL 8-0109 must be prepared and made available to the public before 'any significant authorization is granted for a specific proposal’ ”, (61 NY2d, at 739; see also, Matter of Tri-County Taxpayers Assn. v Town Bd., supra.) Furthermore, it has been held that "[a]ll of the activities or steps in a capital project (i.e., planning, design, contracting, construction and operation) constitute an action”. (Matter of Sun Beach Real Estate Dev. Corp. v Anderson, 98 AD2d 367, 371 [2d Dept 1983], affd 62 NY2d 965.)
It was the intention of the Legislature "that environmental factors be given consideration '[a]s early as possible in the formulation of a proposal for an action’ ”. (Matter of Sun Beach Real Estate Dev. Corp. v Anderson, supra, at 371.) In the court’s opinion, that point must be prior to the acceptance of any proposal or the signing of any contracts. One of the fundamental purposes of SEQRA is the consideration of alternatives (ECL 8-0109 [2] [d]; Matter of Rye Town/King Civic Assn. v Town of Rye, 82 AD2d 474, 481 [2d Dept 1981], appeals dismissed 55 NY2d 747), including alternative locations that may lessen the environmental impact. Consideration of alternative sites should take place prior to a commitment being made to any site.
Turning now to the applications being made, the Town’s cross motion to dismiss the petition is granted. Since the court has determined that the FRP does not violate the provisions of SEQRA, the petitioners do not have a cause of action. The petitioners’ application for a preliminary injunction is, therefore, denied as moot.