OPINION OF THE COURT
John A. Milano, J.
Petitioners move by order to show cause requesting this court for an order preliminarily enjoining respondents, Metropolitan Transportation Authority, New York City Transit Authority (N.Y.C.T.A.) and New York City Department of Transportation (D.O.T.) from proceeding in the Jamaica-Archer Avenues two-way conversion, as set forth in the annexed petition and from taking any other acts in furtherance thereof, pending a final determination in this proceeding and adequate compliance with the requirements of relevant State and City environmental laws and regulations, upon the ground that respondents’ actions are in violation of petitioners’ rights respecting the subject of this proceeding, and if not enjoined, may tend to render a judgment in favor of petitioners in this proceeding moot and ineffectual.
Respondent, New York City Department of Transportation, cross-moves this court for an order pursuant to CPLR 3211 (a) (7) and 7804 (f) dismissing the petition as against said respondent.
The motion papers, cross motion, memoranda and supporting documentation, exhibits, letters and affidavits were received by this court late Wednesday afternoon, August 25, 1993. The court held a hearing on August 26, 1993. In addition, several lengthy conferences were also held throughout the day with all parties and attorneys concerned in an effort to resolve the issues but to no avail.
FACTS
For many years prior to 1990, Jamaica and Archer Avenues *603 were two-way streets for their entire length. In December 1988, petitioner, Jamaica Chamber of Commerce, commenced litigation challenging the rerouting of buses in the Jamaica Central Business District that resulted from the opening of the Archer Avenue subway extension. As part of the settlement of litigation, D.O.T. entered into a stipulation by which it agreed to study the feasibility of converting sections of Jamaica and Archer Avenues to one-way in order to accommodate new bus routes in the area.
After an initial survey of various options, D.O.T. in November 1990 temporarily made Jamaica Avenue one-way eastbound between 153rd Street and 168th Street and Archer Avenue one-way westbound between 168th Street and 139th Street. D.O.T. monitored and evaluated the results of this change in traffic patterns for a number of months. Thereafter, in August 1992, it issued a lengthy report setting forth the various benefits and problems that resulted from this experiment.
In June 1993, after considering the issues raised in the report, D.O.T. officials decided to end their experiment and to restore the affected sections of Jamaica and Archer Avenues to their former two-way status. Since June, D.O.T. has been notifying the public and various interested individuals and organizations of that decision and preparing for the conversion. The affected section of the two streets are now scheduled to revert to two-way on August 28.
INJUNCTIVE RELIEF
As to petitioners’ request for a preliminary injunction or a stay pursuant to CPLR 7805, such relief should not be granted unless the applicant establishes a clear likelihood of ultimate success on the merits, irreparable injury absent the injunction and a balancing of the equities in the applicant’s favor. (Grant Co. v Srogi, 52 NY2d 496, 517 [1981]; Walter Karl, Inc. v Wood, 137 AD2d 22, 25 [2d Dept 1988]; Up-Grade Educ. Servs. v Rappoport, 136 AD2d 628 [2d Dept 1988]; P & L Group v Garfinkel, 132 AD2d 536, 537 [2d Dept 1987]; Chester Civic Improvement Assn. v New York City Tr. Auth., 122 AD2d 715 [1st Dept 1986].)
Decisions such as where to route buses or whether streets should be one-way or two-way raise issues which are inherently governmental and political and not judicial in nature. Those are precisely issues which courts, for sound *604 reasons, generally decline to entertain and a governmental or municipal agency is free to perform its discretionary acts relating to the delivery of services or the allocation of resources without judicial oversight. Although petitioners are in favor of the one-way pairing experiment conducted by the D.O.T. and N.Y.C.T.A., other merchants, community boards, public officials, bus riders and public citizens are not. It is precisely these types of issues which are reserved to executive and legislative officers to decide, and not the courts. It is submitted that the subject of reverting traffic patterns on Archer and Jamaica Avenues in Queens County, a complex issue of transportation planning, is one that is more properly resolved by the governmental agencies charged with those specific responsibilities. Those decisions which implicate, inter alia, safety, traffic, and ease of public transportation generally are not justiciable. (Matter of Parent Teacher Assn. v Board of Educ., 138 AD2d 108 [1st Dept 1988]; Matter of Abrams v New York City Tr. Auth., 39 NY2d 990, 992 [1976]; McKechnie v New York City Tr. Police Dept., 130 AD2d 466 [2d Dept 1987]; Leads v Metropolitan Transp. Auth., 117 Misc 2d 329 [App Term, 1st Dept 1983]; see also, Matter of New York State Inspection, Sec. & Law Enforcement Empls. v Cuomo, 64 NY2d 233 [1984]; Jones v Beame, 45 NY2d 402 [1978]; Matter of Community Action Against Lead Poisoning v Lyons, 43 AD2d 201, 202-203 [3d Dept 1974], affd on opn below 36 NY2d 686 [1975].)
ENVIRONMENTAL CONCERNS
The Authority, prior to implementing its route structure to the Archer Avenue Station upon its opening in 1988 made a reasoned elaboration of the relevant environmental concerns and on the basis of its analysis, reasonably concluded that the bus routes chosen would not have any significant environmental impacts. The judicial standard of review is the "hard look”, i.e, whether the agency made a "reasoned elaboration”. And this standard does not authorize a court to conduct a detailed de novo analysis of every environmental impact of, or alternative to, a proposed project.
In reviewing an agency’s determination of matters for which an environmental impact statement (EIS) is required, a court may only annul a determination as to the sufficiency of an EIS and the environmental consequences of the proposed project if the EIS is not rational, is arbitrary and capricious, or is unsupported by substantial evidence. A flexible standard *605 of review, allowing considerable latitude for the exercise of discretion by the responsible administrative agency or governmental body, is particularly appropriate for the assessment of the environmental consequences of a project, which frequently involves technical and scientific issues more properly entrusted to the expertise of an agency, rather than to a court of general jurisdiction. (Aldrich v Pattison, 107 AD2d 258 [2d Dept 1985]; Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 416 [1986]; Matter of Martin v Koppelman, 124 AD2d 24 [2d Dept 1987]; H.O.M.E.S. v New York State Urban Dev. Corp., 69 AD2d 222 [4th Dept 1979].)
The changes made in 1988 were determined to be minimal and Jamaica Avenue continued to be served by many buses. The Authority ran the routes from 1988 through the end of 1990, when the experimental one-way pairing study began. Petitioners chose not to press their challenge to the Authority’s determination at that time and instead sought an agreement that a one-way pairing feasibility study of "the experiment” be undertaken. Said experiment although lasting more than two years was nevertheless an experiment subject to changes and restoration, if feasibility studies so provided.
It is argued by the respondents that an action, rerouting traffic and bus routing that reinstates the status quo ante to what it had been prior to the "experiment” is not one that would now, presently, require compliance with the State Environmental Quality Review Act (SEQRA).
The requirements of SEQRA are set forth in ECL 8-0101 et seq. and in regulations promulgated by the State Department of Environmental Conservation, 6 NYCRR 617. Generally, SEQRA requires a State or local agency to initially determine if an action that it proposes to take is likely to have a significant environmental impact. If such a finding is made, the proposed action must be preceded by the preparation of an environmental impact statement providing a detailed analysis of the long and short term environmental impacts likely to result from the action. (ECL 8-0109; 6 NYCRR 617.6.)
The SEQRA regulation makes it clear, however, that preliminary studies, surveys and tests designed to aid agency officials in determining whether to take final or permanent action are not subject to environmental review. First, the regulations (6 NYCRR 617.3 [c]) expressly provide:
"Nothing in this Part shall prevent an agency or an applicant from:
*606 "(1) conducting concurrent environmental, engineering, economic, feasibility and other studies and preliminary planning and budgetary processes necessary to the formulation of a proposal for action, provided those activities do not commit the agency to commence, engage in or approve such action”.
Moreover, the regulations go on to designate certain types of action as "Type II”, thereby rendering them exempt from environmental review. Among the actions designated Type II (6 NYCRR 617.13 [d] [18]) is: "information collection, including basic data collection and research, water quality and pollution studies, traffic counts, engineering studies, surveys, subsurficial investigations and soils studies that do not commit the agency to undertake, fund or approve any Type I or unlisted action.”
The cases have likewise consistently held that preliminary planning and study which does not commit an agency to a final or permanent course of action is exempt from environmental review under SEQRA. (See, Matter of City of Yonkers v County of Westchester, 183 AD2d 823 [2d Dept 1992] [County’s stipulation with DEC to conduct "Sewer System Evaluation Survey” not subject to SEQRA review]; Matter of Schiff v Board of Estimate, 122 AD2d 57 [2d Dept 1986] [Board of Estimate resolution recommending that Department of Sanitation study feasibility of constructing several resource recovery facilities not subject to SEQRA review]; see also, Matter of Citizens For An Orderly Energy Policy v Cuomo, 78 NY2d 398 [1991]; Matter of Programming & Sys. v New York State Urban Dev. Corp., 61 NY2d 738 [1984]; Matter of McKelvey v White, 184 AD2d 834 [3d Dept 1992]; Matter of Essex County v Executive Dept., 172 AD2d 970 [3d Dept 1991]; Housing Justice Campaign v Koch, 164 AD2d 656 [1st Dept 1991]; Matter of Nassau/Suffolk Neighborhood Network v Town of Oyster Bay, 134 Misc 2d 979 [Sup Ct, Nassau County 1987].)
D.O.T.’s temporary conversion of portions of Jamaica and Archer Avenues to one-way status falls squarely within the scope of the foregoing exemption. That action was part of an evaluation of the optimal routing of traffic in the Jamaica Central Business District. Indeed, petitioners concede that D.O.T.’s stated purpose in that regard was "to operate the One-Way Pair Plan as an experiment and to later determine whether it should be continued.”
In undertaking the experiment, D.O.T. made no commitment that it would continue the one-way routing of the *607 affected streets beyond the time needed to evaluate the results of the experiment. The stipulation executed by D.O.T. thus provides: "Nothing contained [herein] is intended to compel the parties to reach a particular result with respect to the outcome of the Feasibility Study, or the issues which may be raised in the course of conducting the Feasibility Study.”
It is therefore clear that D.O.T.’s traffic routing experiment was exempt from SEQRA review. That being the case, the decision to end that experiment and restore Jamaica and Archer Avenues to their prior, long-standing traffic patterns is likewise exempt. Indeed, even if the court were to find that action of this type is not exempt from SEQRA review, the rerouting experiment, from its inception, would thereby have violated the requirements of SEQRA and the only appropriate remedy would be to restore the affected streets to their status prior to the experiment, which is exactly what D.O.T. proposes to do. In short, under no circumstances would petitioners be entitled to the relief they seek.
Logically, if SEQRA was not implicated then, when the status quo was altered, why would it be applicable now?
Even if SEQRA were to be deemed to apply to decisions such as these, a debatable point, in any event, N.Y.C.T.A. prepared an Environmental Assessment Form (EAF), which concluded that the proposed action (reversion of Jamaica Avenue/Archer Avenue one-way street system back to two-way operation based on information and analysis) would not result in any significant adverse environmental impacts. This court on the basis of the totality of the circumstances and facts herein, and in taking a "hard look” at the "reasoned elaboration” of the Authority, concludes that said agency did not act in an arbitrary or capricious manner. Further, the Authority reviewed the "over-all” impact after the intended change; it performed this evaluation not by a block-by-block tally of property but rather by reviewing the relevant downtown Jamaica area. After making such review on the over-all area, the Authority in a negative declaration, concluded that the environment would not be impacted.
BALANCE OF THE EQUITIES
Petitioners claim "irreparable” harm based solely on speculation that their sales will fall if bus passengers are given a convenient ride home, instead of being forced to take a circuitous detour to the front of certain merchants’ stores. *608 Other merchants, however, assert that their business interests have been terribly affected by the one-way pairing experiment. In either case, such harm is not irreparable in the legal meaning of the term. There is simply no vested right to continued economic benefit derived from the flow of passengers. (Hall & McChesney v State of New York, 15 Misc 2d 748 [Ct Cl 1959], affd 11 AD2d 899, lv denied 11 AD2d 977 [4th Dept 1960], lv denied 8 NY2d 710 [1960].)
It is evidently clear that the respondents should be permitted to go forward with their carefully executed, careful and appropriate plan to reinstate the status quo on Jamaica and Archer Avenues and that a determination to the contrary would cause serious problems for the public, who should not have to continue to suffer any further adverse consequences.
CONCLUSION
This court after having carefully considered the arguments advanced by respective counsel at the hearing conducted on August 26, 1993 and having reviewed the order to show cause, the petition, memoranda, exhibits and various supporting documentation, finds that the said respondents acted properly and within their discretion concerning the said implementation to a two-way traffic conversion. D.O.T. has cross-moved for dismissal of the petition. M.T.A. and N.Y.C.T.A. also join in the application of D.O.T. to dismiss the petition.
Although the order to show cause in this case does not establish a return date for the CPLR article 78 proceeding and purports to bring on an application solely for a preliminary injunction, this court notwithstanding, is making its ruling on the merits.
Accordingly, the order to show cause for a preliminary injunction is denied; the cross motion of D.O.T. and the applications of M.T.A. and N.Y.C.T.A. to dismiss the petition are granted and the petition is dismissed as to all of the party respondents.