■ In the Matter of MITCHEL MAIDMAN et al., Appellants, et al., Petitioners, v INCORPORATED VILLAGE OF SANDS POINT,

Respondent. [738 NYS2d 362] —In a proceeding pursuant to CPLR article 78, inter alia, to review two resolutions of the Board of Trustees of the Incorporated Village of Sands Point, both dated May 9, 2000, which adopted a findings statement pursuant to the State Environmental Quality Review Act and approved an amendment to the master plan for the Village Club at Sands Point, the petitioners Mitchel Maidman and Adam Hanft appeal from a judgment of the Supreme Court, Nassau County (Franco, J.), dated August 10, 2000, which denied the petition and dismissed the proceeding.

Ordered that the judgment is affirmed, with costs.

The Village Club of Sands Point (hereinafter the club) is a 208-acre recreational facility owned by the Incorporated Village of Sands Point (hereinafter the Village). When the Village acquired the club from IBM in 1994 it was improved with a mansion, tennis courts, and a nine-hole golf course. In November 1997 the Village's Board of Trustees (hereinafter the Board) approved a proposed master plan for the expansion and improvement of the club's facilities. An environmental review pursuant to the State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]) was conducted which resulted in the adoption of a findings statement and approval of the master plan on March 23, 1999. The master plan did not provide for any change in the use of an exit to the property on Astor Lane known as the east gate, which had traditionally been used for emergency access only.

The Board thereafter commissioned a study with respect to the feasibility of the creation of an additional access road and the traffic conditions on the surrounding roads. The Village issued a positive declaration pursuant to SEQRA and directed the preparation of a draft environmental impact statement (hereinafter DEIS) regarding traffic circulation and ingress and egress to the club. Following consideration of the DEIS, a public hearing, and preparation of a final environmental impact statement, the Board approved resolutions dated May 9, 2000, which, inter alia, adopted a findings statement pursuant to SEQRA and amended the master plan to, inter alia, permit use of a new entrance on Thayer Lane as the principal means of ingress and egress to the club property and to permit use of the east gate on Astor Lane as an unrestricted exit.

This proceeding was commenced by, among others, residents of Astor Lane who sought to nullify the May 9, 2000, resolutions. We conclude that the Supreme Court properly dismissed the proceeding.

When reviewing SEQRA determinations, courts are limited

to considering "whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion" (CPLR 7803 [3]; *see, Chinese Staff & Workers Assn. v City of New York,* 68 NY2d 359, 363). "[I]t is not the role of the courts to weigh the desirability of any action or choose among alternatives, but to assure that the agency itself has satisfied SEQRA, procedurally and substantively" (*Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400, 416).

Contrary to the petitioners' argument, the Board identified the relevant areas of environmental concern with respect to the traffic conditions, took a "hard look" at them, and made a "reasoned elaboration" of the basis for its determination (*see, Matter of Jackson v New York State Urban Dev. Corp., supra* at 417; *Chinese Staff & Workers Assn. v City of New York, supra* at 363-364).

The petitioners contend that the Board engaged in improper segmentation by failing to consider the opening of an entrance on Thayer Lane and the use of the east gate as an unrestricted exit during the SEQRA review which preceded adoption of the master plan in March, 1999. Segmentation occurs when "the environmental review of a single action is broken down into smaller stages or activities, addressed as though they are independent and unrelated, needing individual determinations of significance" (*Matter of Teich v Buchheit,* 221 AD2d 452, 453 [internal quotation marks omitted]; 6 NYCRR 617.2 [ag]). The regulations which prohibit segmentation are "designed to guard against a distortion of the approval process by preventing a project with potentially significant environmental effects from being split into two or more smaller projects, each falling below the threshold requiring full-blown review" (*Matter of Teich v Buchheit, supra* at 453). In addition, certain activities may not be excluded from the definition of a project for the purpose of making it appear that adverse environmental impacts have been minimized to circumvent the detailed review called for under SEQRA (*see, Matter of Long Is. Pine Barrens Socy. v Planning Bd.,* 204 AD2d 548, 550-551; *Matter of Schultz v Jorling,* 164 AD2d 252, 255-256).

We conclude that the Board's action in reviewing traffic issues surrounding the use of the east gate and creation of a new entrance on Thayer Lane after initial approval of the master plan did not constitute improper segmentation. In connection with the subsequent SEQRA review, the Board considered the club's master plan as a whole, and the impact of increased traffic on roads both inside and outside the boundaries of the prop-

erty due to the expansion of the club's facilities was subject to a full review (*see, Matter of Concerned Citizens for Envt. v Zagata,* 243 AD2d 20). Florio, J.P., O'Brien, H. Miller and Townes, JJ., concur.