■ In the Matter of EAST END PROPERTY COMPANY #1, LLC, et al., Appellants, v RICHARD M. KESSEL et al., Respondents. [851 NYS2d 565]—

In a hybrid proceeding pursuant to CPLR article 78, inter alia, to review two determinations of the Long Island Power Authority, both dated December 15, 2005, which, after a hearing, adopted a findings statement pursuant to the State Environmental Quality Review Act, and authorized Richard M. Kessel, as Chairman of the Board of Trustees of the Long Island Power Authority, or his designee, to enter into a power purchase agreement and other related agreements with Caithness Long Island, LLC, regarding the construction and operation of a 350 megawatt dual-fuel, combined-cycle combustion turbine generator on a 15-acre parcel of land in the Town of Brookhaven, and taxpayer action pursuant to State Finance Law § 123-b, the petitioners-plaintiffs appeal, as limited by their brief, from stated portions of an order and judgment (one paper) of the Supreme Court, Nassau County (Cozzens, J.), entered August

25, 2006, which, among other things, in effect, denied the amended petition and dismissed the proceeding and granted those branches of the motions of the respondents-defendants which were pursuant to CPLR 3211 to dismiss the sixth and seventh causes of action.

Ordered that the order and judgment is affirmed insofar as appealed from, with one bill of costs payable to the respondents appearing separately and filing separate briefs.

Initially, contrary to the determination of the Supreme Court, the appellants Medford Taxpayers and Civic Association, Inc., Yaphank Taxpayers and Civic Association, Inc., and South Yaphank Civic Association (hereinafter the civic associations) have standing to maintain the first, second, third, fourth, fifth, and seventh causes of action of the amended petition and complaint (*see Matter of Dental Socy. of State of N.Y. v Carey*, 61 NY2d 330, 333-334 [1984]; *Matter of Douglaston Civic Assn. v Galvin*, 36 NY2d 1, 7-8 [1974]; *cf. Rudder v Pataki*, 93 NY2d 273, 278-281 [1999]; *Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 775-777 [1991]). However, none of the appellants have standing to assert the sixth cause of action alleging violations of Public Authorities Law § 1020-f. The individual appellants failed to demonstrate sufficient potential injury in fact to sustain their burden of establishing standing to challenge the power of the Long Island Power Authority (hereinafter LIPA) to enter into a contract without approval from the Public Authorities Control Board (*see Society of Plastics Indus. v County of Suffolk*, 77 NY2d at 772-773; *cf. Matter of Town of Islip v Long Is. Power Auth.*, 301 AD2d 1, 8-9 [2002]; *Matter of Long Is. Pine Barrens Socy. v Town of Islip*, 261 AD2d 474, 475 [1999]). Public Authorities Law § 1020-f (aa) mandates that "[n]otwithstanding any other provision of law to the contrary," LIPA "shall not undertake any project without the approval of the public authorities control board." In their affidavits, the individual appellants simply state that they are "New York State citizen taxpayers and Long Island Power Authority customers and ratepayers." In the absence of some injury in fact, the "zone of interest" test will not confer standing on the individual appellants merely because they are customers of the utility (*see Matter of Lederle Labs. Div. of Am. Cyanamid Co. v Public Serv. Commn. of State of N.Y.*, 84 AD2d 900 [1981]). Similarly, the civic associations failed to allege a sufficient injury in fact concerning the alleged failure of LIPA to obtain approval from the Public Authorities Control Board. Thus, the Supreme Court properly granted those branches of the respondents-defendants' motions which were to dismiss the sixth cause of action for lack of standing.

Moreover, the Supreme Court properly, in effect, denied the amended petition and dismissed the proceeding seeking relief pursuant to CPLR article 78. The State Environmental Quality Review Act ([ECL art 8] hereinafter SEQRA) was designed to "insure[ ] that agency decision-makers—enlightened by public comment where appropriate—will identify and focus attention on any environmental impact of proposed action, that they will balance those consequences against other relevant social and economic considerations, minimize adverse environmental effects to the maximum extent practicable, and then articulate the bases for their choices" (*Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400, 414-415 [1986]; *Matter of Halperin v City of New Rochelle,* 24 AD3d 768, 775 [2005]; *Matter of Coalition for Future of Stony Brook Vil. v Reilly,* 299 AD2d 481, 483 [2002]). It is axiomatic that "judicial review of a SEQRA determination is limited to determining whether the challenged determination was affected by an error of law, or was arbitrary and capricious, an abuse of discretion, or was the product of a violation of lawful procedure" (*Matter of Village of Tarrytown v Planning Bd. of Vil. of Sleepy Hollow,* 292 AD2d 617, 619 [2002]; *see Akpan v Koch,* 75 NY2d 561, 570 [1990]; *Matter of UPROSE v Power Auth. of State of N.Y.,* 285 AD2d 603, 607 [2001]). Courts "may review the record to determine whether the agency identified the relevant areas of environmental concern, took a 'hard look' at them, and made a 'reasoned elaboration' of the basis for its determination" (*Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d at 417, quoting *Aldrich v Pattison,* 107 AD2d 258, 265 [1985]; *see Matter of New York City Coalition to End Lead Poisoning v Vallone,* 100 NY2d 337, 348 [2003]). In this regard, "it is not the role of the courts to weigh the desirability of any action or choose among alternatives, but to assure that the agency itself has satisfied SEQRA, procedurally and substantively" (*Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d at 416; *see Matter of Chemical Specialties Mfrs. Assn. v Jorling,* 85 NY2d 382, 397 [1995]; *Chinese Staff & Workers Assn. v City of New York,* 68 NY2d 359, 363 [1986]).

Furthermore, SEQRA mandates literal compliance with its procedural requirements and substantial compliance is insufficient to discharge the responsibility of the agency under the act (*see Matter of Group For S. Fork v Wines,* 190 AD2d 794, 795 [1993]; *Matter of Rye Town/King Civic Assn. v Town of Rye,* 82 AD2d 474, 481 [1981]). "Literal compliance is required because the Legislature has directed that the policies of the State and its political subdivisions shall be administered to the fullest extent possible in accordance with SEQRA" (*Matter of*

*Consolidated Edison Co. of N.Y. v New York State Dept. of Envtl. Conservation,* 112 AD2d 989, 991 [1985] [internal quotation marks omitted]).

"Actions," as that term is contemplated by SEQRA (ECL 8-0105 [4]), are to be reviewed "[a]s early as possible" in the decisional process for purposes of determining whether an environmental impact statement (hereinafter EIS) will be necessary (ECL 8-0109 [4]; *see Matter of Tri-County Taxpayers Assn. v Town Bd. of Town of Queensbury,* 55 NY2d 41, 47). Here, LIPA, as lead agency, properly commenced SEQRA review before "any significant authorization [was] granted for a specific proposal" to require the filing of an EIS (*Matter of Tri-County Taxpayers Assn. v Town Bd. of Town of Queensbury,* 55 NY2d at 47 [internal quotation marks omitted]; *see Hudson Riv. Sloop Clearwater v Cuomo,* 222 AD2d 386, 387 [1995]). Neither the issuance of the request for proposals nor the memorandum of understanding entered into between LIPA and Iroquois Gas Transmission System LP (hereinafter Iroquois), pursuant to which Iroquois would conduct a feasibility study exploring the possible construction of a 21.5-mile natural gas pipeline between the terminus of its existing point in South Commack, New York, and the project site for the purpose of supplying natural gas (hereinafter the Iroquois Pipeline Extension), committed LIPA to a "specific project plan" (*Matter of Programming & Sys. v New York State Urban Dev. Corp.,* 61 NY2d 738, 739 [1984]), or a "definite course of future decisions" (*Hudson Riv. Sloop Clearwater v Cuomo,* 222 AD2d at 386-387; *see Matter of City of Ithaca v Tompkins County Bd. of Representatives,* 164 AD2d 726, 728 [1991]; *Matter of Nassau/Suffolk Neighborhood Network v Town of Oyster Bay,* 134 Misc 2d 979, 982 [1987]).

In addition, while it is true that Type I actions, such as the project at issue, require the preparation of a full environmental assessment form (hereinafter the EAF), and the lead agency is responsible for preparing part 2 and, as needed, part 3 (*see* 6 NYCRR 617.6 [a] [2]), under these circumstances, the failure of LIPA to complete parts 2 and 3 of the EAF did not require nullification of the entire environmental review procedure, which was otherwise taken in accordance with SEQRA (*see Save Audubon Coalition v City of New York,* 180 AD2d 348, 365 [1992]; *Business & Community Coalition to Save Brownsville v New York City Dept. of Envtl. Protection,* 173 AD2d 586, 587 [1991]). Pursuant to 6 NYCRR 617.6 (a) (4), "[a]n agency may waive the requirement for an EAF if a draft EIS is prepared or submitted. The draft EIS may be treated as an EAF for the purpose of determining significance." Here, to require LIPA to

comply with SEQRA procedure by completing parts 2 and 3 of the EAF, after it had already compiled both a draft EIS and a final EIS, which it could properly use in lieu of an EAF (*see* 6 NYCRR 617.6 [a] [4]), would be pointless (*see Matter of Rusciano & Son Corp. v Kiernan,* 300 AD2d 590, 591 [2002]).

Further, LIPA satisfied its obligations under SEQRA by taking a "hard look" at the potential environmental impacts of the project in a final EIS (hereinafter the FEIS), which thoroughly analyzed, among other things, land use and zoning impacts, impacts on historic, archaeological, and cultural resources, traffic, transportation, and noise impacts, impacts on visual resources and neighborhood character, air quality impacts, socioeconomic impacts, groundwater usage and water quality impacts, stormwater runoff impacts, terrestrial ecology impacts, cumulative impacts, and alternatives to the project. "Not every conceivable environmental impact, mitigating measure or alternative must be identified and addressed before a FEIS will satisfy the substantive requirements of SEQRA" (*Horn v International Bus. Machs. Corp.,* 110 AD2d 87, 94 [1985], quoting *Aldrich v Pattison,* 107 AD2d 258 [1985]; *see Coalition Against Lincoln W. v City of New York,* 94 AD2d 483, 491 [1983], *affd* 60 NY2d 805 [1983]). Although the appellants disagree with data and/or methodologies utilized by LIPA, in its lengthy analyses of potential environmental impacts, the conclusion of LIPA is supported by accepted governmental guidelines and scientific authorities. The findings in an environmental impact statement "need not achieve scientific unanimity" (*Matter of Residents for More Beautiful Port Washington v Town of N. Hempstead,* 149 AD2d 266, 274 [1989], quoting *Matter of Schiff v Board of Estimate of City of N.Y.,* 122 AD2d 57, 60 [1986]).

In addition, LIPA adequately analyzed a reasonable range of alternatives to the project (*see Matter of Rusciano & Son Corp. v Kiernan,* 300 AD2d at 591-592; *Matter of Schiff v Board of Estimate of City of N.Y.,* 122 AD2d at 57, 60).

The appellants further contend that LIPA engaged in improper segmentation by failing to consider the Iroquois Pipeline Extension during the SEQRA review of the project. Segmentation occurs when "the environmental review of a single action is broken down into smaller stages or activities, addressed as though they are independent and unrelated, needing individual determinations of significance" (*Matter of Teich v Buchheit,* 221 AD2d 452, 453 [1995] [internal quotation marks omitted]; *see* 6 NYCRR 617.2 [ag]; *Matter of Farrington Close Condominium Bd. of Mgrs. v Incorporated Vil. of Southampton,* 205 AD2d 623, 626 [1994]). The regulations which prohibit

segmentation are " 'designed to guard against a distortion of the approval process by preventing a project with potentially significant environmental effects from being split into two or more smaller projects, each falling below the threshold requiring full-blown review' " (*Matter of Maidman v Incorporated Vil. of Sands Point*, 291 AD2d 499, 501 [2002], quoting *Matter of Teich v Buchheit*, 221 AD2d at 453). "In addition, certain activities may not be excluded from the definition of a project for the purpose of making it appear that adverse environmental impacts have been minimized to circumvent the detailed review called for under SEQRA" (*Matter of Maidman v Incorporated Vil. of Sands Point*, 291 AD2d at 501; *see Matter of Long Is. Pine Barrens Socy. v Planning Bd. of Town of Brookhaven*, 204 AD2d 548, 550-551 [1994]; *Matter of Schultz v Jorling*, 164 AD2d 252, 255 [1990]). Although the project at issue and the natural gas pipeline to supply fuel to the project were part of an integrated and cumulative development plan (*see Matter of Village of Westbury v Department of Transp. of State of N.Y.*, 75 NY2d 62, 69 [1989]; *Matter of Defreestville Area Neighborhoods Assn. v Town Bd. of Town of N. Greenbush*, 299 AD2d 631 [2002]; *Matter of Citizens Concerned for Harlem Val. Envt. v Town Bd. of Town of Amenia*, 264 AD2d 394 [1999]; *Matter of Teich v Buchheit*, 221 AD2d at 453), environmental review of the pipeline under SEQRA was preempted by the regulatory authority of the Federal Energy Regulatory Commission (hereinafter the FERC). We note that Iroquois is a "natural gas company" engaged in the interstate transmission of natural gas via interstate gas pipelines. In that regard, "the regulation of interstate gas pipelines is a matter within the exclusive jurisdiction of the FERC" (*Matter of Skyview Acres Coop. v Public Serv. Commn. of State of N.Y.*, 163 AD2d 600, 602 [1990]). The federal preemption of state regulations of such pipelines, however, also extends to state assessment of environmental matters (*see National Fuel Gas Supply Corp. v Public Serv. Commn. of State of N.Y.*, 894 F2d 571 [1990], *cert denied* 497 US 1004 [1990]). Pursuant to the requirements of the National Environmental Policy Act, the FERC is required to undertake its own environmental analysis (*see* 42 USC § 4321 *et seq.*; *Matter of Niagara Mohawk Power Corp. v New York State Dept. of Envtl. Conservation*, 82 NY2d 191, 196 [1993], *cert denied* 511 US 1141 [1994]). In the instant matter, since the FERC has authority to consider environmental issues, LIPA was prohibited from engaging in "concurrent site-specific environmental review" (*see National Fuel Gas Supply Corp. v Public Service Commn.*, 894 F2d at 579). Accordingly, its segmentation of the natural gas pipeline from the environmental review of the project was not improper.

Furthermore, the "new information" that the appellants brought to the attention of LIPA after the issuance of the FEIS was not of the type that would require further environmental review of the project (*Matter of Croton Watershed Clean Water Coalition, Inc. v New York City Dept. of Envtl. Protection*, 20 AD3d 476, 477 [2005]). Contrary to the appellants' contention, there were no environmentally-significant modifications made after LIPA issued the FEIS, nor was there evidence of changes to the proposal, newly-discovered information, or adverse impacts which were inadequately addressed in the FEIS that would require the preparation of a supplemental EIS (*see Matter of Halperin v City of New Rochelle*, 24 AD3d at 777; *Matter of Village of Pelham v City of Mount Vernon Indus. Dev. Agency*, 302 AD2d 399, 400-401). Thus, the determination of LIPA not to prepare a supplemental EIS (*see* 6 NYCRR 617.9 [a] [7] [i]), was neither arbitrary and capricious, nor an abuse of discretion (*see Matter of Haberman v City of Long Beach*, 307 AD3d 313, 314 [2003]; *Matter of Town of Pleasant Val. v Town of Poughkeepsie Planning Bd.*, 289 AD2d 583 [2001]).

Finally, under State Finance Law § 123-b, a "citizen taxpayer, whether or not such person is or may be affected or specially aggrieved . . . may maintain an action for equitable or declaratory relief, or both, against an officer or employee of the state, who in the course of his or her duties, has caused, is now causing, or is about to cause, a wrongful expenditure, misappropriation, misapplication, or any other illegal or unconstitutional disbursement of state funds or state property." This statute is narrowly construed as a grant of "standing to correct clear illegality of official action," but does not allow the interposition of "litigating plaintiffs and the courts into the management and operation of public enterprises" (*Matter of Abrams v New York City Tr. Auth.*, 39 NY2d 990, 992 [1976]; *see Saratoga County Chamber of Commerce v Pataki*, 100 NY2d 801, 813 [2003], *cert denied* 540 US 1017 [2003]; *Matter of Transactive Corp. v New York State Dept. of Social Servs.*, 92 NY2d 579, 588-589 [1998]; *Garber v Board of Trustees of State Univ. of N.Y.*, 38 AD3d 833 [2007]). In the case at bar, the conclusory allegations set forth in the amended petition and complaint were patently insufficient to establish that the challenged expenditures were an "illegal" use of state funds (*Garber v Board of Trustees of State Univ. of N.Y.*, 38 AD3d 833 [2007]; *see Kennedy v Novello*, 299 AD2d 605, 607 [2002]) and the appellants also failed to demonstrate that the "challenged expenditures can be clearly traced to identifiable State funds" (*Matter of Schulz v State of New York*, 217 AD2d 393, 395 [1995]; *see Public Util. Law Project of N.Y. v New York State Pub. Serv. Commn.*, 252 AD2d 55, 58

[1998]; *Matter of Schulz v Cobleskill-Richmondville Cent. School Dist. Bd. of Educ.*, 197 AD2d 247, 251 [1994]). Accordingly, the Supreme Court properly granted those branches of the respondents-defendants' motions which were to dismiss the seventh cause of action.

The appellants' remaining contentions are without merit. Rivera, J.P., Ritter, Florio and Fisher, JJ., concur.