■ In the Matter of GROUP FOR THE SOUTH FORK, INC., et al., Respondents, v ROY WINES et al., Appellants, and MICHAEL HELD, Intervenor-Respondent-Appellant.—In a proceeding pursuant to CPLR article 78 to review a determination of the respondent Planning Board of the Town of Southampton which granted preliminary approval for a subdivision application, the appeal is from a judgment of the Supreme Court, Suffolk County (Brown, J.), entered September 20, 1990, which, *inter alia,* granted the petition, annulled the determination, and directed the Planning Board of the Town of Southampton to prepare a Draft Environmental Impact Statement before reconsidering the subject application on its merits.

Ordered that the judgment is affirmed, with one bill of costs.

The petitioner's claims with respect to the propriety of the review by the Planning Board of the Town of Southampton (hereinafter the Planning Board) of the subdivision application pursuant to the State Environmental Quality Review Act (hereinafter SEQRA) were not time barred by Town Law § 282. There is no question that the proceeding was commenced within 30 days after the filing of the Planning Board's preliminary plat approval *(see,* Town Law § 282). The appellants contend, however, that the 30-day Statute of Limitations began to run with the filing of the "conditioned negative declaration", approximately nine months prior to the preliminary plat approval. This position lacks merit because the filing of the conditioned negative declaration was a mere intermediate step in the environmental review process. Indeed, subsequent to the filing of the conditioned declaration, the Planning Board conducted a hearing at which the environmental significance of the proposed subdivision was discussed, and it hired a consultant to conduct a hydrogeologic and water quality evaluation of the property. Furthermore, when the Planning Board granted preliminary approval it found that "as a result of said investigation" the subdivision would not have a significant effect upon the environment. Thus it is clear that the Planning Board had not completed its environmental review until it issued the preliminary plat approval containing the

negative declaration. It is well settled that the Statute of Limitations prescribed by Town Law § 282 does not begin to run until the Planning Board has completed its environmental review process *(see, Matter of Long Is. Pine Barrens Socy. v Planning Bd.,* 168 AD2d 498, 499, *affd* 78 NY2d 608; *Matter of Casement v Town of Poughkeepsie Planning Bd.,* 162 AD2d 685).

We also find that Planning Board's issuance of the conditioned negative declaration constituted an unauthorized departure from the strictures of SEQRA. In so finding, we are mindful of the fact that "[j]udicial review of a lead agency's SEQRA determination is limited to whether the determination was made in accordance with lawful procedure and whether, substantively, the determination 'was affected by an error of law or was arbitrary and capricious or an abuse of discretion' " *(Akpan v Koch,* 75 NY2d 561, 570, quoting CPLR 7803 [3]). Significantly, it is well established that " 'literal compliance with both the letter and spirit of SEQRA is required and substantial compliance will not suffice' " *(Matter of Holmes v Brookhaven Town Planning Bd.,* 137 AD2d 601, 603, quoting *Inland Vale Farm Co. v Stergianopoulos,* 104 AD2d 395, 396, *affd* 65 NY2d 718; *see also, Matter of E.F.S. Ventures Corp. v Foster,* 71 NY2d 359, 371; *Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400, 417).

The primary purpose of SEQRA is " 'to inject environmental considerations directly into governmental decision making' " *(Akpan v Koch, supra,* at 569, quoting *Matter of Coca-Cola Bottling Co. v Board of Estimate,* 72 NY2d 674, 679). To this end, SEQRA mandates the preparation of an Environmental Impact Statement (hereinafter EIS) when a proposed development project "may have a significant effect on the environment" (ECL 8-0109 [2]). It is well settled that because the operative word triggering the requirement of an EIS is "may", there is a relatively low threshold for impact statements *(see, Matter of Holmes v Brookhaven Town Planning Bd., supra,* at 603; *Chinese Staff & Workers Assn. v City of New York,* 68 NY2d 359, 364-365).

Agencies are directed to make an initial determination as early as possible as to whether an EIS needs to be prepared for a proposed action (ECL 8-0109 [4]). "[T]o require an EIS for a proposed action, the lead agency must determine that the action may include the potential for at least one significant environmental effect" (6 NYCRR 617.6 [g] [1] [i]). Such a finding is deemed a "positive declaration" (6 NYCRR 617.2 [cc]). "[T]o determine that an EIS will not be required for an

action, the lead agency must determine either that there will be no environmental effect or that the identified environmental effects will not be significant" (6 NYCRR 617.6 [g] [1] [ii]). Such a finding is deemed a "negative declaration" (6 NYCRR 617.2 [y]).

In 1984, when the Planning Board issued a "conditioned negative declaration" for the proposed subdivision, there was no provision in either SEQRA or the implementing regulations delineating such a determination. In 1987, the Department of Environmental Conservation amended the regulations to provide for the issuance of a conditioned negative declaration in certain circumstances (see, 6 NYCRR 617.6 [h]). However, we find no support for the assertion that this amendment applied retroactively to the instant determination or that conditioned negative declarations were procedurally appropriate at the time the Planning Board made its determination. Indeed, given the requirement of literal compliance with SEQRA, such a position is untenable.

Even assuming arguendo that the 1987 amendment applied to the 1984 determination, the Planning Board failed to demonstrate that it took a "hard look" at the areas of environmental concern, and failed to make a "reasoned elaboration" of the basis for its determination (see generally, Matter of Jackson v New York State Urban Dev. Corp., supra, at 417). "Conditioned negative declaration (CND) means a negative declaration issued * * * for an unlisted action * * * in which the action as initially proposed may result in one or more significant adverse environmental effects; however, mitigation measures identified and required by the lead agency * * * will modify the proposed action so that no significant adverse environmental impacts will result" (6 NYCRR 617.2 [h]). 6 NYCRR 617.6 (h) (1) (iii) provides in pertinent part that,

"a lead agency has the option to issue a conditioned negative declaration of significance provided that

"the SEQRA conditions imposed * * * have eliminated or adequately mitigated all significant environmental impacts and are supported by the full EAF and any other documentation".

Significantly, the Planning Board found that the original subdivision proposal, as submitted, could have several significant effects on the environment. The conditioned negative declaration was premised upon the finding that "these impacts [could] be reduced", and that a negative declaration could be made conditioned "upon the submission of an acceptable

plan". Although the Planning Board suggested methods by which the significance of the environmental impacts could be "reduced", there was no suggestion or documentation to support a conclusion that the significant impacts would be "eliminated or adequately mitigated". Therefore, the Planning Board failed to properly support its conditioned negative declaration (see, 6 NYCRR 617.6 [h] [1] [iii]; see generally, Matter of Jackson v New York State Urban Dev. Corp., supra, at 417). Furthermore, when the Planning Board issued a negative declaration for the revised subdivision plan, it simply found that the plan, "reasonably mitigate[d] the environmental concerns" noted previously. The Planning Board failed to discuss the mitigation techniques employed, and made no "reasoned elaboration" of the basis for its determination that the plan as revised should no longer have a significant effect on the environment. For all of these reasons, we find that the Planning Board's preliminary plat approval was properly annulled.

The appellants' remaining contentions are academic in light of our determination, or without merit. Rosenblatt, J. P., Ritter, Pizzuto and Santucci, JJ., concur.