■ In the Matter of SIERRA CLUB, INC., et al., Appellants, v POWER AUTHORITY OF THE STATE OF NEW YORK et al., Respondents. [609 NYS2d 599] —Order, Supreme Court, New York County (Kenneth Shorter, J.), entered December 12, 1990, which, in a proceeding pursuant to CPLR article 78 to annul respondent Power Authority's determination to enter into certain contracts, denied the application and dismissed the petition, unanimously affirmed.

The broader challenge in this case, which is the subject of

separate proceedings, is to the proposed construction of hydroelectric dams in Quebec, which is claimed to threaten inundation of tribal lands and wildlife habitat, as well as potential ancillary water quality problems impacting on border areas. The present appeal brings up for review solely the action of the Power Authority in contracting for the annual seasonal purchase of 800 mw's of energy from Hydro-Quebec, for resale to the named utilities for a 20 year term, which actually is an extension and modification of a preexisting contract between the same parties.

A letter of intent was signed by the contracting parties on December 14, 1988, the specifics of which outline the parameters of the contract that was subsequently executed. The agreement was approved by the trustees of the Power Authority at a public meeting on June 27, 1989; there is no credible dispute that petitioners did not have notice. A press release dated the same day specified the nature of the agreement. The contract was signed, pursuant to this approval, on January 23, 1990. On April 20, 1990, petitioners requested a declaratory ruling from the Power Authority concerning the applicability of SEQRA to the contract, but the request was denied on May 21, 1990. The notice of petition was served on May 16, 1990.

The entire proceeding is time barred by the four-month Statute of Limitations governing article 78 proceedings (CPLR 217), which began to run upon the trustees' explicit approval of the agreement on June 27, 1989. It was then that the Power Authority's commitment under the terms of the agreement became " 'formulated and proposed' " *(Matter of Monteiro v Town of Colonie,* 158 AD2d 246, 250), and the administrative process, even if not the contracting process, conferred finality. Even if the subsequent, formal contract had modified the terms of the approval, this fact would not, per se, render the initial approval less final. Notably, though, the formal executed contract did not depart materially either from the terms of the letter of agreement or the trustees' approval.

We reject petitioners' claim that the statutory period should run from the denial of the request for an administrative declaration, and adhere to our prior rulings viewing such requests for declaratory rulings as subterfuges to revive time-barred claims when the challenge is actually to the prior administrative action *(see, e.g., Matter of Bonar v Shaffer,* 140 AD2d 153, 156, *lv denied* 73 NY2d 702).

Nor does the existence of contingent events or conditions subsequent, in this case the satisfaction of Canadian Federal

and Provincial regulatory requirements, toll the Statute of Limitations. The contingencies in this case depend entirely on the actions of third parties *(see, Matter of Palmer v New York State Dept. of Envtl. Conservation,* 132 AD2d 996, 997), and do not affect the generic administrative decision. Even if that decision thereby is not self-executing *(see, Matter of Abrams v Public Serv. Commn.,* 96 AD2d 701, *affd* 61 NY2d 718), the subsequent satisfaction of conditions does not detract from the finality of the trustees' decision to approve the agreement. To the extent that *Sutton v Yates County* (193 AD2d 1126, *lv denied* 82 NY2d 656) may be read to reach a different result, we decline to follow it. Nor do these contingencies comprise an intact and cohesive environmental review process postponing the final agency action until the completion of the entire process *(see, Matter of Wing v Coyne,* 129 AD2d 213, 216; Weinberg, Practice Commentary, McKinney's Cons Laws of NY, Book 17½, ECL C8-0109:6, at 79).

The nonconstitutional facial challenge to the specified provisions of the Power Authority's own regulations, which classify this contract as a Type II action presumably requiring no further environmental review, had to be commenced within four months of the 1985 date of promulgation *(see, New York State Assn. of Counties v Axelrod,* 150 AD2d 845, *lv dismissed* 75 NY2d 765), and therefore is also time barred. No nonfinal aspects of these regulations are challenged *(compare, New York State Assn. of Counties v Axelrod,* 78 NY2d 158, 166). The challenge to the regulations as applied would be governed by the statutory period that governs the challenge to the agreement.

Since judicial review is foreclosed, we do not directly address the merits. However, we note in passing that the subject contract clearly contemplates a flexibility of sources for the energy to be sold, which may be generated regionwide or even purchased from other generators, rather than from any particular source such as the hydroelectric projects that are the subject of petitioners' broader challenge. Nor is there substantial evidence that the contract, silent as to a source for the energy to be purchased thereunder, will drive the construction of those projects. Concur—Sullivan, J. P., Ellerin, Asch and Tom, JJ.