■ In the Matter of FARRINGTON CLOSE CONDOMINIUM BOARD OF MANAGERS et al., Appellants, v INCORPORATED VILLAGE OF SOUTHAMPTON et al., Respondents. [613 NYS2d 257] —In a proceeding pursuant to CPLR article 78 to review a determination of the Board of Trustees of the Incorporated Village of Southampton, dated March 24, 1991, inter alia, approving plans for the gradual development of a park, the appeal is from a judgment of the Supreme Court, Suffolk County (Mullen, J.), dated June 16, 1992, which, inter alia, vacated a temporary restraining order and dismissed the proceeding.

Ordered that the judgment is reversed, on the law, the petition is granted, and the determination is annulled, with costs.

The Village of Southampton seeks to develop a village park on an unimproved 17-acre parcel of land. The park is ultimately planned to include, *inter alia,* a baseball field, parking lot, access roads, football/soccer field, softball field, fitness trail, playground, tennis courts, and an administration building. The petitioners, the boards of managers of condominiums whose property is adjacent to the parcel, maintain that the Board of Trustees of the Incorporated Village of Southampton (hereinafter the Board of Trustees) violated the State Environmental Quality Review Act (hereinafter SEQRA) in issuing a "negative declaration" (6 NYCRR 617.2 [y]) for the project, determining that no environmental impact statement was required. We agree and therefore grant the petition.

The primary purpose of SEQRA is " 'to inject environmental considerations directly into governmental decision making' " *(Akpan v Koch,* 75 NY2d 561, 569, quoting *Matter of Coca-Cola Bottling Co. v Board of Estimate,* 72 NY2d 674, 679). To this end, SEQRA mandates the preparation of an Environmental Impact Statement (hereinafter EIS) when a proposed development project "may have a significant effect on the environment" (ECL 8-0109 [2]). It is well settled that because the operative word triggering the requirement of an EIS is "may", there is a relatively low threshold for impact statements *(see, Matter of Group for S. Fork v Wines,* 190 AD2d 794; *Matter of Holmes v Brookhaven Town Planning Bd.,* 137 AD2d 601, 603; *Chinese Staff & Workers Assn. v City of New York,* 68 NY2d 359, 364-365).

In the instant case, the proposed park involves the physical alteration of more than 10 acres of land and, thus, constitutes a Type I action *(see,* 6 NYCRR 617.12 [b] [6] [i]). A Type I action is one that is more likely to require the preparation of an EIS than unlisted actions, i.e. actions not specifically listed in 6 NYCRR 617.12 (b) *(see,* 6 NYCRR 617.12 [a]).

"[T]o require an EIS for a proposed action, the lead agency must determine that the action may include the potential for at least one significant environmental effect" (6 NYCRR 617.6 [g] [1] [i]). Such a finding is deemed a "positive declaration" (6 NYCRR 617.2 [cc]). "[T]o determine that an EIS will not be required for an action, the lead agency must determine either that there will be no environmental effect or that the identified environmental effects will not be significant" (6 NYCRR

617.6 [g] [1] [ii]). Such a finding is deemed a "negative declaration" (6 NYCRR 617.2 [y]).

Type I actions require the preparation of a full Environmental Assessment Form (hereinafter EAF) for use in determining the significance of the action in question (see, 6 NYCRR 617.5 [b]). Two such EAF's were prepared in the instant case, and the Village Board of Trustees reviewed them in issuing a negative declaration for the park.

We note that in making determinations of significance, the reviewing agencies must look at impacts which may be reasonably expected to result from the proposed action and compare them against an illustrative list of criteria provided in 6 NYCRR 617.11. This list contains "indicators of significant effects on the environment". It includes actions which result in a substantial adverse change in existing traffic or noise levels (6 NYCRR 617.11 [a] [1]), the encouraging or attracting of a large number of people to a place or places for more than a few days, compared to the number of people who would come to such a place absent the action (6 NYCRR 617.11 [a] [3]), and a substantial change in the use, or intensity of use, of land including agricultural, open space or recreational resources (6 NYCRR 617.11 [a] [8]).

The EAFs indicated that the development of the park would result in all three of the above mentioned consequences. It would adversely increase traffic and noise in the area, large numbers of people would be attracted to the park, and there would be a substantial change in recreational resources and open space. All of these indicators suggested that an EIS should have been prepared. However, the Board of Trustees made a determination to the contrary. Significantly, upon issuing its "negative declaration", the Village failed to make a "reasoned elaboration" of the basis for its determination, and failed to demonstrate that it took a "hard look" at the relevant areas of environmental concern (see, Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 417). It simply determined, without elucidation, that a negative declaration was warranted. Although the degree of detail included in a negative declaration will "obviously vary with the nature of the proposal" (Matter of Har Enters. v Town of Brookhaven, 74 NY2d 524, 530; Matter of Cannon v Murphy, 196 AD2d 498, 501), the Board of Trustee's negative declaration gave virtually no detail at all. In light of the wide variety of potential environmental effects identified in the EAFs, the Village's conclusory negative declaration was insufficient and violated SEQRA (see, Matter of Jackson v New York State Urban Dev.

*Corp., supra; Matter of Cannon v Murphy, supra; Matter of Group for S. Fork v Wines, supra).*

We further find that the Board of Trustees appears to have conducted an improper "segmented review" (6 NYCRR 617.2 [gg]). There is evidence in the record that in conducting its SEQRA review, the Board of Trustees considered the park project as consisting only of the construction of a parking lot, access roads, and a baseball field, since these were the only features of the park which were immediately planned. However, as noted above, the ultimate development plans for the park anticipated much more. For the purpose of determining whether an action will cause a significant effect on the environment, the reviewing agency must consider reasonably related long-term, short-term and cumulative effects, including other simultaneous or subsequent actions which are included in any long-range plan of which the action under consideration is a part (6 NYCRR 617.11 [b] [1]). The Village failed to comply with this requirement.

"Considering only a part or segment of an action is contrary to the intent of SEQR[A]. If a lead agency believes that circumstances warrant a segmented review, it must clearly state in its determination of significance and any subsequent EIS the supporting reasons and must demonstrate that such review is clearly no less protective of the environment. Related actions should be identified and discussed to the fullest extent possible." (6 NYCRR 617.3 [k] [1].) The Village failed to do so here. Instead, it apparently only reviewed the initial phase of the park's development.

The petitioners' remaining contentions are without merit *(see, Nehrbas v Incorporated Vil. of Lloyd Harbor,* 2 NY2d 190, 193; *Matter of County of Monroe [City of Rochester],* 72 NY2d 338; *Dunn v Town of Warwick,* 146 AD2d 601; *Armenia v Luther,* 152 AD2d 928). Rosenblatt, J. P., Miller, Lawrence and Florio, JJ., concur.