OPINION OF THE COURT
 

 Bellacosa, J.
 

 This Court granted petitioners permission to appeal an order of the Appellate Division, which affirmed a judgment of Supreme Court, dismissing their CPLR article 78 petition. The New York City Council granted special use permits to respondent developer, Penn Yards Associates, and amended the City Map and the Zoning Map to allow for construction of the Riverside South project, a large scale mixed-use development on a 74-acre parcel located on the west side of Manhattan along the Hudson River. The petitioners seeking to invalidate the three authorizing resolutions of the New York City Council include Coalition Against Lincoln West, a corporation of tenants residing on Manhattan’s West Side, as well as other cooperative apartment corporations and tenant associations.
 

 The primary issues concern the scope and timing of local Community Board 7 review and involvement under both the Uniform Land Use Review Procedure (ULURP) and a restrictive declaration entered into by the City with other parties in 1982. Specifically, petitioners claim that: (1) under ULURP, a land use application may not be deemed "complete” by the Department of City Planning if the application does not contain the proposed superseding restrictive declaration of 1992; (2) the modification/cancellation restrictions of the 1982 restrictive declaration run with the land and accord the local community board a 30-day review period which is linked to the 60-day ULURP review period; and (3) late delivery of the 1992 restrictive declaration denied Community Board 7 this 30-day review opportunity.
 

 We agree with the courts below that ULURP contains no legal requirement for a superseding restrictive declaration to be included in order to deem an application "complete,” and that the City Planning Department’s "completeness”
 
 *129
 
 determination is rational and not arbitrary or capricious
 
 (see, Matter of Frishman v Schmidt,
 
 61 NY2d 823, 825). Moreover, the 30-day review period established in the 1982 restrictive declaration is independent of the 60-day ULURP review period and, in any event, the Community Board had ample time to review the superseding restrictive declaration before the City Council finally acted. Consequently, we affirm the order of the Appellate Division.
 

 The subject property consists of a cluster of parcels covering 74 acres, bordered by the Hudson River on the west, 72nd Street on the north, a vertical embankment near West End Avenue on the east, and 59th Street on the south. In the early 1980s, Lincoln West, the former owners of the property, had planned a large-scale development project. In 1982, the developers executed a restrictive declaration containing a combination of promises, proposed agreements and covenants in exchange for the required approvals, zoning changes and permits from City and State agencies. The plans and preliminary work on the Lincoln West project collapsed in 1984. The permits also lapsed and alterations to the City Map were never filed. The acreage was then acquired by respondent developer, Penn Yards Associates, an affiliate of the Trump Organization. In conjunction with various organizations and City agencies, Penn announced an agreement to develop the somewhat scaled back multiuse Riverside South project, the 74-acre assemblage at issue in this lawsuit.
 

 In December 1991, Penn applied for an amendment to the City Map pursuant to ULURP. In February 1992, Penn filed an application for an amendment to the City Zoning Map and an application for special use permits. On May 15, 1992, the Department of City Planning and the Department of Environmental Protection, acting as co-lead agencies under the State Environmental Quality Review Act (SEQRA), issued a notice of completion of the draft environmental impact statement (DEIS). The DEIS had been prepared by Penn’s consultant, and the substantive content was framed by scoping documents prepared by the co-lead agencies
 
 (see,
 
 6 NYCRR 617.10 [c];
 
 see also,
 
 6 NYCRR 617.7, 617.8, 617.9).
 

 On May 19, 1992, respondent Department of City Planning, pursuant to ULURP, certified the application "complete” and forwarded it, together with the DEIS, to Community Board 7 for review and advisory comment. At that point, a superseding restrictive declaration had neither been filed with Penn’s
 
 *130
 
 application to the Department of City Planning, nor forwarded to the Community Board. On July 10, 1992, the Community Board received the draft superseding restrictive declaration. After numerous public hearings, on July 27, 1992, Community Board 7 issued its 71-page report analyzing the project. In a 17-page resolution, it recommended disapproval of the Riverside South project by a 35-to-l vote.
 

 Additional public hearings on the ULURP application were held in August and September 1992. Public hearings on the DEIS were held in September, with the co-lead agencies issuing a notice of completion of the 2,500-page final environmental impact statement in October 1992. After the relevant parties reached agreement as to appropriate and practicable mitigative measures, in December 1992, the City Council approved the final conditions on the project. These conditions were incorporated into the 1992 superseding restrictive declaration.
 

 Penn’s application for the project, together with applicable restrictions and necessary authorizations, were thereafter officially approved and adopted in three City Council resolutions. The official resolutions (1) approved changes in the City Map; (2) amended the Zoning Map to allow for the project’s development; and (3) approved special use permits for the project and incorporated modifications to the prior restrictive declaration, including sewage output limitations and payment of $10 million for local subway system improvements.
 

 Petitioners sued to annul the three resolutions on grounds that: (1) the ULURP application could not be deemed "complete” because the superseding restrictive declaration was not included; (2) delivery of the 1992 restrictive declaration to the Community Board with only 18 days remaining of the 60-day ULURP review period violated the 30-day review period of the 1982 restrictive declaration’s modification provision; (3) the 1992 restrictive declaration was illegal because it denied petitioners’ members enforcement rights; and (4) SEQRA had been violated.
 

 Supreme Court dismissed the lawsuit. It found that the restrictive declaration "is not one of the documents required under sec[tian] 197-c [of the New York City Charter]” for a completeness determination. The court also accorded "great weight” to the City Planning Commission’s decision not to include the restrictive declaration as a necessary component of a "complete” application. The court further concluded that
 
 *131
 
 the modification/cancellation provisions of the 1982 restrictive declaration did not run with the land and, therefore, had no impact on the approval of developer Penn’s land use application and the superseding restrictive declaration. Finally, Supreme Court concluded that there was no infirmity with respect to the legality of the 1992 restrictive declaration or the adequacy of the SEQRA process. The Appellate Division affirmed (208 AD2d 472), essentially reiterating the reasoning of Supreme Court.
 

 We, too, reject petitioners’ arguments and conclude that (1) the superseding restrictive declaration is not a legal prerequisite to a municipal determination of application "complete[ness]” under ULURP (New York City Charter § 197-c [a], [b], [c]), and (2) under the facts presented here, the City agencies acted rationally and within their discretionary authority in making the "complete[ness]”-of-application determination
 
 (see, Appelbaum v Deutsch,
 
 66 NY2d 975, 977 [applying deferential "irrational, unreasonable” judicial review standard to decisions by agency charged with administering zoning resolution];
 
 accord, Matter of Frishman v Schmidt,
 
 61 NY2d 823, 825,
 
 supra).
 
 Neither the New York City Charter provisions (§ 197-c [a], [b], [c], [i]) nor the implementing regulations (62 RCNY 2-02 [a] [5] [iv], [v]) make the filing of a superseding restrictive declaration a prerequisite to a municipal entity’s deeming an application complete for ULURP notification and processing purposes. Moreover, the City determined that given the nature of a restrictive declaration, which would evolve to definiteness over the course of project discussions and negotiations, it would not be feasible to officially fix or set a superseding restrictive declaration at the initial application stage of the process. Therefore, the City agencies reasonably concluded that the superseding restrictive declaration was not a necessary component of a "complete” application. We, thus, uphold the City’s determination in this respect as correct and neither arbitrary nor capricious.
 

 Petitioners hypothesize that if the superseding restrictive declaration is not required at the initial application phase, then the Department of City Planning is, in essence, exercising "unfettered discretion” in determining "complete[ness]” of a land use application. They argue further that this theorem produces an irrational and unreasonable result because it would eviscerate meaningful Community Board advisory involvement in the ULURP process. These contentions are unavailing.
 

 
 *132
 
 The New York City Charter directs that "the department of city planning shall be responsible for certifying * * * [ULURP] applications complete and ready to proceed” in accordance with other express statutory provisions (§ 197-c [c]). These provisions (1) specify with particularity the indispensable minimum inclusions for a ULURP application
 
 (see,
 
 NY City Charter § 197-c [b]); and (2) direct the City Planning Commission to promulgate regulations concerning what constitutes a complete application for ULURP purposes (NY City Charter § 197-c [i]). These regulations were indeed promulgated and, like the authorizing statute, they do not require inclusion of a restrictive declaration for completeness-of-application certification
 
 (see,
 
 62 RCNY 2-02 [a] [5] [iv], [v]).
 

 The regulations are, themselves, reasonable, as is the City’s application of them in the instant case. The regulations comprehensively define the required components of a complete application as: (1) a standard application form (62 RCNY 2-02 [a] [5] [i]); (2) accompanying documents, maps, plans, and drawings (62 RCNY 2-02 [a] [5] [ii]); (3) jurisdictional information (62 RCNY 2-02 [a] [5] [iii]); (4) completed reviews, reports, and sign-offs by involved State and City agencies (62 RCNY 2-02 [a] [5] [iv]); and (5) a determination of negative declaration or notice of acceptance of a DEIS (62 RCNY 2-02 [a] [5] [v]). Under the implementing regulations, then, an application cannot be deemed "complete” until all potential negative environmental impacts have been identified and are, thus, brought to the attention of all interested parties for meaningful review and comment. That was done and followed to the letter in this case. The municipal respondents and the land use developer applicant met the prescriptions of the statute and the regulations. Consequently, the City officials cannot be said to have acted beyond their powers and authority, and there is, thus, no basis for the courts to nullify their resolutions.
 

 We are fortified in our view and analysis of this case by
 
 Community Bd. 7 v Schaffer
 
 (84 NY2d 148). There, we held that the Community Board lacked capacity to challenge the Department of City Planning’s action in denying the Community Board’s demand, under the Freedom of Information Law, for a draft restrictive declaration and related correspondence concerning a different project — Trump City — which was later abandoned
 
 (id.,
 
 at 152, 157-159). The reasoning of that case is cogently apt in that we noted the Community Board’s "limited role in the land use planning process”
 
 (id.,
 
 at 157). Our
 
 *133
 
 analysis was also rooted in the relevant express statutory and regulatory requirements
 
 (id.,
 
 at 159). Significantly, in concluding that the Community Board’s advisory mission could be accomplished without its having access to the restrictive declaration, this Court relied on the fact that the New York City Charter and the attendant regulations were silent as to restrictive declarations being part of the ULURP application review process
 
 (id.,
 
 at 159;
 
 see,
 
 NY City Charter § 197-c [b], [i]; 62 RCNY 2-02 [a] [5] [i]-[v]). The
 
 Schaffer
 
 dispositional analysis is telling in the resolution of the instant controversy.
 

 Next, we find unavailing petitioners’ arguments that the 30-day modification/cancellation provisions of the 1982 restrictive declaration (art X) are relevant here and that they were violated. Article XI, § 11.05 of the 1982 restrictive declaration provides:
 

 "Except for the purpose of amending, cancelling, or modifying this Declaration pursuant to Article X
 
 [which accords the local community board 30 days to review the proposed modification], references * * * to 'Declarant’ shall be deemed to include Declarant’s heirs, successors, assigns and legal representatives in respect of the Subject Property” (emphasis added).
 

 Thus, while other provisions of the 1982 restrictive declaration may run with the land, the modification/cancellation provisions of article X do not, by virtue of its explicit exception.
 

 Even were the 30-day period applicable to Community Board 7’s review of the superseding restrictive declaration, petitioners’ argument still falters. Nothing in the 1982 restrictive declaration links its 30-day window to the 60-day ULURP application review period. So long as Community Board 7 had 30 days in which to consider the superseding restrictive declaration prior to the City’s final action on it, the 30-day provision of the 1982 restrictive declaration is satisfied. That opportunity was available to Community Board 7. It received the superseding restrictive declaration on July 10, 1992. The City did not act to accept and adopt the new restrictive declaration in final form under the pertinent resolution until December 1992. Community Board 7 held several public hearings after receiving the draft superseding restrictive declaration. In its advisory report, it included extensive commentary on the superseding restrictive declaration and Riverside South as a
 
 *134
 
 whole, concluding with its negative recommendation that the project should not be built. Nothing is found in the record showing that the City failed to accept any Community Board input on the new restrictive declaration during the entire preapproval period, which far exceeded the 30-day review window. Consequently, petitioners’ asserted procedural violation, based on the Community Board’s receipt of the 1992 restrictive declaration at a point in time when only 18 days remained on its 60-day ULURP application review period, is of no legal or practical import. The legality of the municipal approval processes has been tested and found satisfied in all the courts. No further legal impediments, within the framework of this litigation, would appear to block Riverside South being built.
 

 We have considered petitioners’ remaining contentions and conclude that they are without merit. Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Simons, Titone, Smith, Levine and Ciparick concur.
 

 Order affirmed, with costs.