■ In the Matter of SOUTH BRONX CLEAN AIR COALITION et al., Respondents, and S.P.M. ENVIRONMENTAL, INC., Intervenor-Respondent, v NEW YORK STATE DEPARTMENT OF TRANSPORTATION et al., Appellants, and BRONX COMMUNITY PAPER COMPANY, Intervenor-Appellant. [630 NYS2d 73] —Judgment,

Supreme Court, Bronx County (Jerry L. Crispino, J.), entered March 16, 1995, to the extent that it set aside and annulled both the lease between respondents Department of Transportation ("DOT") and Harlem River Yard Ventures, Inc. ("HRYV") and the approval of a land use plan submitted by HRYV to DOT pursuant to that lease, unanimously reversed, on the law, the petition denied and the proceeding dismissed, without costs.

This proceeding involves the proposed public/private development of the Harlem River Yard, an abandoned rail facility in the South Bronx, as a railroad terminal and for mixed ancillary purposes. DOT acquired the 96-acre site in 1982, as part of a program to improve modern rail access to the metropolitan area. Initially, DOT envisioned a "trailer-on-flatcar" ("TOFC") freight terminal at the site, which was dependent upon rehabilitation of several rail access lines, most notably a 2-mile stretch called the Oak Point Link, which would connect the Highbridge Yard on the east bank of the Harlem River and the Oak Point Yard in the South Bronx. Throughout the decade of the eighties, as environmental impact studies were conducted, DOT sought to market the concept of a TOFC facility at the site, but the combination of an unstable economy and inability to complete construction of the Oak Point Link led to modification of those plans. Finally, in 1989 DOT commissioned a private study to explore and analyze transportation-related uses of the site in terms of both alternatives regarding completion of the Oak Point Link. Because TOFC facilities had already been developed in New Jersey, the study recommended alternative development of the site as an "internodal park", which would combine rail transportation with commercially leased warehousing and ancillary activities, such as refrigeration, distribution and solid waste transfer facilities.

DOT issued a request for proposals ("RFP") (which included the study's recommendations) from private sector sponsors interested in developing the site for public benefit, alternatively with and without the Oak Point Link. Of the four responses received (not one of which proposed exclusive TOFC use), HRYV was selected in April 1990 for its multi-use development plan. A lease was signed in August 1991 and approved by the State Comptroller the following month, at which time HRYV took possession of the premises. A State environmental quality review was then commenced, as mandated by the State Environmental Quality Review Act (ECL art 8). As part of this process, HRYV submitted in May 1992 its detailed land use plan, which had been outlined earlier in the RFP and the lease.

The plan called for 47 acres to be dedicated to transportation, including a 28-acre TOFC/COFC (container-on-flatcar) facility, a 14-acre bulk transfer facility, and a 5-acre solid waste transfer facility, as well as a waste paper recycling plant and space for dry and refrigerated warehouses and the New York Wholesale Flower Market. The land use plan was included in a Final Environmental Impact Statement, which was submitted to DOT in December 1993, and approved by that agency on May 13, 1994.

Petitioners, relying on a later (1992) study commissioned by DOT, the Port Authority and the New York City Economic Development Corporation, claim the RFP was skewed to discourage bidders from considering exclusive development of the site as a TOFC facility. As a result, they allege, in their petition dated August 1994, that such a preferable use was never considered as a viable alternative.

Clearly, petitioners, in commencing this proceeding, were less motivated by environmental concerns than by economic, political or other factors. In favoring the 1992 jointly commissioned study over the 1989 study, trial term engaged in economic impact analysis, which is an inappropriate basis for review of an environmental clearance (see, Matter of Nixbot Realty Assocs. v New York State Urban Dev. Corp., 193 AD2d 381, lv denied 82 NY2d 659). The court should not have substituted its analysis for the expertise of the lead agency, simply because that agency rejected what it considered to be a less feasible alternative use (Coalition Against Lincoln W. v City of New York, 94 AD2d 483, affd 60 NY2d 805). DOT had every right to reject petitioners' alternative proposal, which had been fully aired in public debate (see, Webster Assocs. v Town of Webster, 59 NY2d 220, 228-229).* The petition should thus have been denied on the merits.

Of perhaps greater import is the procedural infirmity. A proceeding against an administrative body or officer must be commenced within four months after the determination becomes "final and binding" upon the aggrieved party (CPLR 217 [1]). Petitioners herein focused on DOT's May 1994 approval of the Final Environmental Impact Statement, which, by definition, had more to do with environmental concerns than with HRYV's multi-use plan for the site. As far as petitioners were concerned, their alternative plan for exclusive

---

* The Draft Environmental Impact Statement, completed in May 1993, was not required to address the alternative of exclusive TOFC utilization, which DOT had rejected as infeasible (Shellabarger v Onondaga County Water Auth., 105 AD2d 1134, 1135).

TOFC development was finally rejected when the State Comptroller approved HRYV's lease in September 1991, if not when the lease was actually signed a month earlier. The final impact of that administrative action was what triggered the running of the Statute of Limitations, not the subsequent environmental review (*see, Matter of Villella v Department of Transp.,* 142 AD2d 46, *lv denied* 74 NY2d 602). This proceeding should have been dismissed as time-barred (*see, Matter of Sierra Club v Power Auth.,* 203 AD2d 15).

The motion by Z. Schiffman to file an amicus brief *pro se* is denied. Concur—Murphy, P. J., Ellerin, Wallach, Rubin and Tom, JJ.