■ In the Matter of UPTOWN HOLDINGS, LLC, et al., Petitioners, v CITY OF NEW YORK et al., Respondents. [908 NYS2d 657]—

Petition, pursuant to Eminent Domain Procedure Law § 207, to annul the determination of respondent City of New York Department of Housing Preservation and Development (HPD), issued June 12, 2009, which authorized the condemnation of petitioners' properties, denied, the determination confirmed, and the proceeding dismissed, without costs.

HPD complied with EDPL 202 by commencing publication of the notice of its public hearing at least 10 days before such hearing; it was not required to complete its publication of the notice more than 10 days before the hearing (*see Rodrigues v Town of Beekman*, 120 AD2d 724 [1986], *appeal dismissed* 69 NY2d 822 [1987]; *Matter of Legal Aid Socy. of Schenectady County v City of Schenectady*, 78 AD2d 933 [1980]).

Petitioners may raise the argument that their due process right to be heard was violated (*see* EDPL 207 [C] [1]). However, their contention that that right was violated by respondents' failure to disclose the developer and its plan is unavailing, since

"[t]he constitutional requirement with respect to notice in eminent domain proceedings concerns the opportunity to be heard on the issues of compensation and public use" (*Fifth Ave. Coach Lines v City of New York*, 11 NY2d 342, 348 [1962]). In any event, respondents disclosed the developer and its plans before the EDPL hearing. To the extent petitioners are complaining that respondents did not disclose the developer until after the 2008 amendment to the Harlem-East Harlem Urban Renewal Plan (HEHURP) was approved, their argument is unavailing, since that issue was litigated and decided in petitioners' CPLR article 78 proceeding (*see East Harlem Alliance of Responsible Merchants v City of New York*, 2010 NY Slip Op 30023[U] [Sup Ct, NY County 2010]).

Petitioners also contend that their right to be heard was violated by the designation of HPD, rather than respondent New York City Economic Development Corporation (EDC), as the condemnor; they claim that HPD was designated to circumvent the review by the Borough Board that New York City Charter § 384 (b) (4) would have required had EDC been designated as the condemnor. However, they do not allege that review by the Borough Board would have given them a greater right to be heard than does the EDPL procedure. In any event, the issue whether respondents circumvented New York City Charter § 384 (b) (4) by designating HPD rather than EDC was litigated and decided in petitioners' article 78 proceeding (*see East Harlem*, 2010 NY Slip Op 30023[U] [2010]).

Even if we were to find that the land is not substandard (*compare Matter of Kaur v New York State Urban Dev. Corp.*, 15 NY3d 235 [2010]; *Matter of Goldstein v New York State Urban Dev. Corp.*, 13 NY3d 511 [2009]), the land may still be taken in eminent domain if "it is proved that its taking was for another public purpose and, if there was also a private benefit involved, that the public purpose was dominant" (*Yonkers Community Dev. Agency v Morris*, 37 NY2d 478, 482 [1975], *appeal dismissed* 423 US 1010 [1975]).

Relying on *Kelo v New London* (545 US 469 [2005]), petitioners contend that the public benefits are illusory and speculative because there is no carefully considered, integrated development plan to which a developer is contractually bound. However, *Kelo* does not say that land may be condemned only if there is such a plan. Moreover, the Court of Appeals' decision in *Matter of Aspen Cr. Estates, Ltd. v Town of Brookhaven* (12 NY3d 735 [2009], *cert denied* 558 US —, 130 S Ct 96 [2009]) suggests that such a plan is not required.

Petitioners also rely on *Matter of 49 WB, LLC v Village of*

*Haverstraw* (44 AD3d 226 [2007], *overruled in part on other grounds by Hargett v Town of Ticonderoga*, 13 NY3d 325 [2009]) for the proposition that the public benefits in the case at bar are illusory. However, the facts in *49 WB* are very different from those in the instant proceeding.

Petitioners complain that it is possible that no affordable housing will be built. While HPD's determination and findings do not require affordable housing, both the City Planning Commission's approval of the 2008 amendment to the HEHURP and the final environmental impact statement (FEIS) for the project said that 650 units of low- and moderate-income housing would be included, and respondents' press release announcing the project said that more than 600 affordable housing units would be included. In any event, "the creation of low income housing . . . is not constitutionally required . . . as an element of a land use improvement project that does not entail substantial slum clearance" (*Goldstein*, 13 NY3d at 530).

The FEIS for the project included four alternatives: a no-action alternative, which is required by 6 NYCRR 617.9 (b) (5) (v); an as-of-right alternative; a no-impact alternative; and a bus depot expansion alternative. This is a reasonable range of alternatives (*see generally Matter of County of Orange v Village of Kiryas Joel*, 44 AD3d 765, 769 [2007]).

Petitioners are correct that the no-action analysis in the FEIS is flawed; it seems unlikely (*cf.* 6 NYCRR 617.9 [b] [5] [v]) that no development would occur until 2016 if the project were not approved. However, the as-of-right and no-impact alternatives contemplate organic development. Thus, the FEIS overall considered the development that would occur without the project.

While the as-of-right and no-impact alternatives both contemplate the displacement of existing businesses (i.e., petitioners), petitioners' contention that "there were better alternatives . . . is not a basis to invalidate the FEIS" (*Matter of Coalition Against Lincoln W., Inc. v Weinshall*, 21 AD3d 215, 222 [2005], *lv denied* 5 NY3d 715 [2005]).

Contrary to the claims petitioners made in their opening brief, the FEIS examined the impacts of the bus depot in its new proposed off-site location, and it mentioned negative impacts as well as positive ones. We decline to consider the arguments petitioners made for the first time in their reply brief (*see e.g. Shia v McFarlane*, 46 AD3d 320 [2007]). Concur—Mazzarelli, J.P., Sweeny, Renwick and Manzanet-Daniels, JJ.

Catterson, J., concurs in a separate memorandum as follows: In my view, the record amply demonstrates that the neighbor-

hood in question is not blighted, that whatever blight exists is due to the actions of the City and/or is located far outside the project area, and that the justification of underutilization is nothing but a canard to aid in the transfer of private property to a developer. Unfortunately for the rights of the citizens affected by the proposed condemnation, the recent rulings of the Court of Appeals in *Matter of Goldstein v New York State Urban Dev. Corp.* (13 NY3d 511 [2009]) and *Matter of Kaur v New York State Urban Dev. Corp.* (15 NY3d 235 [2010]) have made plain that there is no longer any judicial oversight of eminent domain proceedings. Thus, I am compelled to concur with the majority.